Gary **BRIDGES**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 14–93–00003–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 14, 1995.

Gary David Bridges, Rosharon, Gerald A. Burks, Galveston, for appellant.

B. Warren Goodson, Jr., Galveston, for appellee.

Before MURPHY, C.J., and ANDERSON and HUDSON, JJ.

## OPINION

ANDERSON, Justice.

Gary Bridges entered a plea of not guilty to the offense of possession of cocaine, a controlled substance.[1] The jury found Bridges guilty and the court assessed punishment, enhanced by two prior convictions, at 30 years confinement in the Texas Department of Criminal Justice, Institutional Division. In two points of error, Bridges asserts the trial court erred in overruling his *Batson* motion and his motion to disclose the identity of a confidential informant. We affirm.

In the first point of error, Bridges contends the State struck a juror in violation of *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986) and TEX.CODE CRIM.PROC.ANN. art. 35.261 (Vernon 1987), when it exercised a peremptory challenge against a black venireperson in a racially discriminatory manner.

At the conclusion of voir dire, the prosecutor struck a black veniremember, Mr. Davy. Defense counsel challenged the peremptory strike on the ground that it was racially motivated. The entire colloquy among the trial court judge, defense counsel, Mr. Elli-

---

1. The crime for which appellant was convicted was committed before September 1, 1994, the effective date of the revised penal code. *See* Acts 1993, 73rd Leg., Ch. 900, § 1.18(b). Therefore, all references to the penal code are to the code in effect at the time the crime was committed.

sor, and the prosecutor, Ms. Criss, relating to the *Batson* challenge is as follows:

> MR. ELLISOR: For the record I am making what I would characterize as a Batson challenge to the jury selection. I note Juror No. 8, Michael Davy was a man of the same race as Gary Bridges, a black man. I did not strike him. There were two other black individuals on the panel. No. 11, Mr. Charles Cannon. No. 27, Levenia Myles, if I'm not mistaken as to who the other black person was. I did not strike her either.

> THE COURT: Mr. Cannon was one of my fellow countrymen from Monroe, Louisiana.

> MR. ELLISOR: I did not ask any questions of Mr. Michael Davy, nor did he respond to any questions I asked. I did not hear the State ask him questions, nor did I hear him respond by raising his hand or saying anything to her questions. I'm asking her to come through with race neutral reasons why he was struck peremptorily.

> MS. CRISS: In this instant [sic] there are three blacks on the panel. The State struck one of them. The one person the State struck was Mr. Cannon. He is the only member of the entire panel—

> MR. ELLISOR: Davy was it not? Not Cannon.

> MS. CRISS: You're right. I'm sorry. Mr. Cannon is the one I did not strike. The only person that I struck was No. 8. As I said, there are three blacks on the panel. Mr. Cannon is the one who made it onto the jury. The one I struck was No. 8, Michael Davy. The reason I struck him he's unemployed. He was the only unemployed person on the jury panel including the alternates. That's the reason I struck him.

> MR. ELLISOR: For point of clarification, what is it about being unemployed that in

your mind makes a person unacceptable as a juror in this type of case?

> MS. CRISS: It's not this particular type of case. It's in any criminal case at all. I'm more comfortable with people who have jobs. It's something I look at when I'm trying to decide whether or not I feel like these people are law-abiding citizens. The fact he was unemployed caused me some concern about that.

> MR. ELLISOR: Again for the record, I feel that merely being unemployed has nothing to do with whether someone is a law-abiding citizen or would make a good juror and would state that I think there's at least some evidence that this could have been racially motivated from trying to take off members of the same race. We object to him being struck, and we request a new panel to voir dire.

> THE COURT: I'll overrule the objection.

During voir dire, neither the prosecutor nor appellant's counsel asked the veniremembers any questions about their employment, or lack of employment. The juror information cards were not introduced into evidence, and there is no indication in the voir dire statement of facts that the trial court reviewed the juror information cards. Moreover, appellant's motion for new trial does not assign error to the trial court's ruling on appellant's *Batson* challenge to the prosecutor's peremptory strike of Mr. Davy.

■ On appeal, appellant asserts, for the first time, that there was disparate treatment of the veniremembers by the State in that the prosecutor struck Mr. Davy based on his juror information card which indicated he was unemployed, but did not strike veniremember 25, whose information card indicated she was retired, or veniremember 20, whose card indicated she was a housewife. Appellant's disparate treatment argument is based on the Court of Criminal Appeals' decision in *Keeton v. State,* 749 S.W.2d 861 (Tex.Crim. App.1988).[2] Appellant also asserts that four

**2.** In *Whitsey v. State,* 796 S.W.2d 707, 713–714 (Tex.Crim.App.1989) the Court noted that in *Keeton* it had discussed the nonexclusive list of factors which weigh against the legitimacy of a race-neutral explanation, and that the presence of any one of these factors tends to show that the State's reasons are not actually supported by the record or are an impermissible pretext. The factors are:

> 1. The reason given for the peremptory challenge is not related to the facts of the case;

of the five objective factors discussed in *Keeton* indicate that the prosecutor's reasons for her strike were not shown to be racially neutral.

The Court in *Vargas v. State*, 838 S.W.2d 552 (Tex.Crim.App.1992) addressed points of error quite similar to those presented here by appellant. In *Vargas*, appellant argued, for the first time on appeal, that a comparison analysis between white venirepersons who were not struck and black venirepersons who were struck showed that the former had characteristics similar to the black venirepersons. And, the appellant in *Vargas* also argued that the prosecutor's stated reasons for striking the black venirepersons were racially discriminatory under the *Keeton* objective factors. We will follow the analysis in *Vargas* and address appellant's argument based on the so-called objective factors first.

 The standard by which an appellate court reviews the trial court's determination of a *Batson* challenge is the clear error standard of review enunciated in *Emerson v. State*, 851 S.W.2d 269, 273 (Tex.Crim.App. 1993) (citing *Vargas v. State*, 838 S.W.2d 552, 554 (Tex.Crim.App.1992)). This standard requires that we defer to the finding of the trial court on the issue of the prosecutor's discriminatory intent because that finding will largely turn on the evaluation of credibility. *Id.* In applying this standard, a determination is made whether the trial court's decision is supported by the record so that it is not clearly erroneous. *Id.* In doing so, we review the record, including the voir dire, the racial makeup of the venire, the prosecu-

tor's neutral explanations, and appellant's rebuttal and impeaching *evidence*. *Id.*

 The five objective factors discussed in *Keeton*, do not, as appellant here contends, control the analysis of the *Batson* claim. *Vargas*, 838 S.W.2d at 554. While these factors may be considered, they are not determinative, and the overriding standard is still whether the trial judge's decision was supported by the record so that it was not clearly erroneous. *Id.*

Bridges here argues that the prosecutor's reason for striking Mr. Davy is not related to the facts of the case; Mr. Davy was not asked any questions; the strike exhibited disparate treatment because persons with the same or similar characteristics as the challenged juror were not struck; and the strike demonstrates a group bias against unemployed persons without showing that the group trait applies to Mr. Davy. Appellant's arguments, based on two of the objective factors, focus on Mr. Davy's unemployed status and the pretextual nature of the prosecutor's strike in the context of this case. In support of the presence of another factor, he asserts that there was a lack of questioning of Mr. Davy. We address these arguments first, before turning to the disparate treatment argument based on a comparison analysis.

 The prosecutor struck Mr. Davy based on the fact that he was unemployed,[3] and because the prosecutor was concerned that he might not be a law-abiding citizen. This facially race neutral explanation is partially based on nonquantifiable characteris-

---

2. There was a lack of questioning to the challenged juror or a lack of meaningful questions;

3. Disparate treatment—persons with the same or similar characteristics as the challenged juror were not struck;

4. Disparate examination of members of the venire, i.e., questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

5. An explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

3. Texas courts have recognized lack of employment as a legitimate basis for striking a potential juror. *Dixon v. State*, 828 S.W.2d 42, 45 (Tex.

App.—Tyler 1991, pet. ref'd); *Hernandez v. State*, 808 S.W.2d 536, 544 (Tex.App.—Waco 1991, no pet.); *Johnson v. State*, 740 S.W.2d 868 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd) (explanation that one veniremember was unemployed and had insufficient ties to the community held legitimate, race-neutral response); *Earhart v. State*, 823 S.W.2d 607, 625 (Tex.Crim.App. 1991) *vacated and remanded on other grounds*, —— U.S. ——, 113 S.Ct. 3026, 125 L.Ed.2d 715 (1993) (trial court's acceptance of prosecutor's explanation of peremptory strike based on veniremember's unemployed status, equivocation on ability to return death sentence, and his association with criminals not clearly erroneous).

tics and assumptions. Thus, as in *Vargas,* the prosecutor's assumption that unemployed persons were not preferred State's jurors is not facially unreasonable.[4] Indeed, in *Purkett v. Elem,* — U.S. —, —, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995) (per curiam opinion) the Supreme Court noted that this stage of the *Batson* process does not demand of the prosecutor an explanation that is persuasive, or even plausible. The inquiry is limited only to the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. *Id.* While the reason given for striking Mr. Davy would seem stronger had the prosecutor questioned Mr. Davy, the reason is not rendered racially impermissible simply because she did not do so. *Vargas,* 838 S.W.2d at 556. Because defense counsel only attacked the facial validity of the reason for the strike, without offering any impeaching evidence, there is nothing in the record to show that the prosecutor's stated reason was pretextual. We overrule appellant's ground for review based on the *Keeton* objective factors.

This brings us to the basic question which appellant presents, which is based on the third objective factor discussed in *Keeton:* the so-called disparate treatment factor which arises from a comparative analysis of the unchallenged white venirepersons to the black venireperson who was struck. Appellant argues (a) venireperson Fitzpatrick was retired, was not questioned about her employment status, but was selected for the jury, and (b) venireperson Gray was a housewife, was not questioned about her employment status, but was selected for the jury. These individuals are alleged to have the same or similar characteristics as Mr. Davy, who was struck.

■ The comparison evidence upon which appellant relies is based entirely on juror information cards, which were not mentioned or offered into evidence by either side, and there is no indication in the voir dire

statement of facts that the trial court reviewed these cards. It is not proper for an appellate court reviewing a trial court's decision on a matter to rely on information that was not admitted as evidence at the *Batson* hearing in the trial court. *Vargas,* 838 S.W.2d at 556. Further, to allow an appellate court to rely upon such information undermines the clear error standard of review for a *Batson* issue which gives great deference to the trial court. *Id.* The Supreme Court in *Hernandez v. New York,* 500 U.S. 352, 368–69, 111 S.Ct. 1859, 1871, 114 L.Ed.2d 395 (1991) stated that proper deference is shown to state court factual determinations when a reviewing court is not left with a "definite and firm conviction that a mistake has been committed."

The full extent of appellant's challenge to the prosecutor's strike of venireperson Davy during the *Batson* hearing is set forth above. The trial court did not have any evidence supporting the comparison analysis now offered in brief. Further, appellant did not even mention the names of the venirepersons who were not struck but who are now alleged to have the same or similar characteristics as Mr. Davy.

■ A defendant must present impeaching evidence to the trial court if he intends to rely on it later. An appellate court may not reverse a trial court's finding based on information that was not introduced into evidence or *elicited* before the trial judge during voir dire. *Vargas,* 838 S.W.2d at 557. (emphasis added).

If in fact appellant had, during voir dire, "elicited" information from venirepersons Fitzpatrick, Gray and Davy regarding their employment status, an appellate court can, pursuant to *Vargas,* review that information under the clear error standard. However, the statement of facts from the voir dire hearing is devoid of any discussion by appellant concerning the employment status of the two venirepersons as compared to the em-

---

4. *Batson* leaves room for the State to exercise its peremptory challenges on the basis of the prosecutor's legitimate "hunches" and past experience, so long as racial discrimination is not the motive. *Keeton v. State,* 749 S.W.2d 861, 865

(Tex.Crim.App.1988) (citing *State v. Antwine,* 743 S.W.2d 51 (Mo.1987)). *Accord, Gambel v. State,* 835 S.W.2d 788, 791 (Tex.App.—Houston [14th Dist.] 1992, no pet.).

ployment status of Mr. Davy, so that an appellate court could evaluate, with a record, the trial court's decision regarding the asserted disparate treatment.[5] Indeed, appellant never even mentioned or referred to the juror information cards at any time during voir dire or during the *Batson* hearing.[6]

■ We hold, therefore, that where, as here, the basis of the comparison information is not in evidence presented to the trial court, either during voir dire or the subsequent *Batson* hearing, we cannot consider it in evaluating a *Batson* claim. See *Young v. State*, 826 S.W.2d 141, 146 (Tex.Crim.App. 1991) (by our ruling today, we are not allowing appellant to raise matters on appeal which were not raised in the trial court). The trial court's ruling on appellant's *Batson* claim was not clearly erroneous. Appellant's first point of error is overruled.

■ In his second point of error, Bridges asserts the court erred when it did not conduct an *in camera* hearing to determine whether the identity of the informant should be disclosed. Appellant relies on the language in TEX.R.CRIM.EVID. 508(c)(2) and *Bodin v. State*, 807 S.W.2d 313 (Tex.Crim.App. 1991).

■ An informant's identity should be revealed when the testimony of the informant is necessary to a fair determination of the issues of guilt or innocence of the accused. Rule 508(c)(2). Before revealing the informant's identity, the informer's potential testimony must be shown to significantly aid appellant, and mere conjecture or supposition about possible relevance is insufficient. Appellant has the burden of demonstrating that the informant's identity must be disclosed. *Abdel–Sater v. State*, 852 S.W.2d 671, 674 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). Appellant must make a plausible showing of how the informer's information may be important.[7] *Id.* The mere filing of a Rule 508 motion is insufficient to obtain a hearing, much less compel disclosure. *Bodin*, 807 S.W.2d at 318. This court must consider all of the circumstances of the case to determine if the trial court erred by not requiring the State to disclose the informer's identity. *Edwards v. State*, 813 S.W.2d 572, 580 (Tex.App.—Dallas 1991, pet. ref'd).

Rule 508(c)(2) generally establishes a privilege for a state or subdivision to refuse to disclose the identity of a person who has furnished information assisting in an investigation of a possible violation of a law. There are three exceptions to this privilege. The second of these, 508(c)(2), provides that a party may obtain the identity of the informer if the party makes a showing that the informer may be able to give testimony necessary to a fair determination of the guilt or innocence of the accused. Here, the appellant made no such showing.

Much of the testimony during the trial came from narcotics task force officers who stated that they saw Bridges go to the trunk of a car at the residence several times during the initial stake out on March 6, 1992. Dur-

---

**5.** A record, with evidence supporting a *Batson* claim is critical for an appeal. In *Young v. State*, 826 S.W.2d 141, 144 (Tex.Crim.App.1991), the Court urged "defense counsel to make comparisons as part of his rebuttal evidence either during his cross-examination of the State's attorney or during the *Batson* hearing ..., because the trial judge's findings are accorded great deference upon appellate review."

**6.** In *Cornish v. State*, 848 S.W.2d 144 (Tex.Crim. App.1993), defense counsel specifically referred to juror information cards during the *Batson* hearing. The trial court then overruled defense counsel's request to put on evidence of a *Batson* violation, and when defense counsel requested permission to submit a bill of exception, the trial court responded "the cards will speak for themselves". The Court of Criminal Appeals determined that it was apparent that the parties and

the trial judge regarded the juror information cards as a significant part of the evidence supporting a resolution of the *Batson* claim, and it held that the juror information cards could be considered on appeal as if admitted for purposes of evaluating appellant's *Batson* claim. Because the statement of facts for voir dire and the *Batson* hearing contains no reference to the juror information cards, we cannot deem them admitted for purposes of review as in *Cornish*.

**7.** Appellant's Rule 508 motion states that the informant is a material witness because the informant "was present at the offense upon which the charges against the Defendant are based....". In fact, the informant purchased drugs at the residence which the police had under surveillance *prior* to the raid during which the defendant was arrested, and the informant was not present during the raid.

ing the raid, the officers testified they found crack cocaine in the trunk of the car which they had seen Bridges visit repeatedly. The sole purpose of the informant was to determine the presence of cocaine or other controlled substances at the residence under surveillance in order to establish a basis for a search warrant. After the informant had been returned to the location where he was originally picked up, the raid team entered the house and found crack cocaine in the trunk of the car utilized by Bridges. Appellant was charged with, and tried for, possession of a controlled substance based on evidence provided by the raid team, not the informant.

These factors distinguish this case from *Bodin* upon which appellant relies. In *Bodin*, the facts are similar, up to a point. There, the police arranged for the informer to go into appellant's apartment, and the informer emerged with methamphetamine which he told police he had purchased from appellant. Police used the informer's information to obtain a search warrant. A search of appellant's apartment ensued, which led to the discovery of the methamphetamine appellant was charged with possessing. *But*, in *Bodin*, unlike the case sub judice, the appellant testified that a man named James left the drugs in the apartment the day before the search. Appellant wanted to know the informer's identity so that if it were James, appellant could pursue an entrapment defense. Based on these facts, the Court of Criminal Appeals held that appellant made a plausible showing that the informer could give testimony necessary to a fair determination of guilt.

Bridges makes no assertion here that the informant left drugs at the house. Thus, there is no basis for the informant's testimony to support an entrapment defense, and, accordingly, any reliance on· *Bodin* is misplaced.

Because the appellant did not meet his threshold burden of demonstrating, with evidence, that the informant's identity must be disclosed by making a plausible showing of how the informer's information may be important, there is no basis for a determination that the informant's testimony was essential to a fair determination of the issues of appellant's guilt or innocence. Therefore, an *in camera* hearing was not required to determine whether the informant's identity would be admissible. We overrule appellant's second point of error and affirm the judgment of the trial court.