COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS


)
JOHN RONALD BIRD,                                      )                  No. 08-05-00016-CR
)
                                    Appellant,                        )                              Appeal from
)
v.                                                                          )                  286rd District Court
)
THE STATE OF TEXAS,                                   )                  of Dallas County, Texas
)
                                    Appellee.                          )                  (TC# F03-57549-T)

O P I N I O N

             Appellant appeals his conviction of aggravated sexual assault. A jury assessed punishment
at fifteen years’ confinement in the Institutional Division of the Texas Department of Criminal
Justice, and imposed a $10,000 fine. We affirm. 
FACTUAL SUMMARY
            Appellant and the mother of the victim, Belinda James, began dating in 2000. At the time,
James and her daughter, Michelle, were living with James’ mother and brother. In August 2003,
James purchased a used car for Appellant. When the vehicle broke down, it was left parked in front
of James’ mother’s home. From October to November 2003, Appellant and James regularly slept
in the car. Eventually, Michelle began to miss her mother and she also slept in the car. The sleeping
arrangements varied, but according to James, only Michelle slept in the back seat of the vehicle. On
occasion, James would leave the car to use the bathroom in her mother’s home. James suffered from
irritable bowel syndrome which often required lengthy trips. While she was in the bathroom,
Appellant and Michelle remained alone in the car together. 
            On November 12, 2003, Michelle was taken to Parkland Hospital for a psychiatric
evaluation. Although she was twelve years old, Michelle has a low IQ of 43 and the mental
capabilities of a six-year-old child. James was ultimately notified by the police that her daughter was
pregnant. Michelle told her mother that “Ron” had gotten her pregnant.
            Appellant was arrested and while in police custody, he asked that a DNA sample be taken. 
The police performed a buccal swab test. Melissa Sweetland, the forensic biologist who tested the
buccal swab, testified that Appellant could not be excluded as the father and the probability that he
was the father was greater than 99.99 percent.
BATSON CHALLENGE
            In his first issue for review, Appellant contends the trial court erred in overruling his Batson
challenge. A prospective juror may not be peremptorily challenged solely on the basis of race. 
Batson v. Kentucky, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). To establish that
a peremptory strike is racially motivated, a defendant must make a three-pronged showing. First,
he must establish a prima facie case raising an inference of purposeful discrimination on the part of
the prosecuting attorney. Batson, 476 U.S. at 96; Mathis v. State, 67 S.W.3d 918, 924
(Tex.Crim.App. 2002). The burden of production then shifts to the State to provide a racially neutral
explanation. Id.; Brewer v. State, 932 S.W.2d 161, 164 (Tex.App.--El Paso 1996, no pet.). The
State’s explanation must relate to the particular case being tried but it need not rise to a level
justifying a challenge for cause. Batson, 476 U.S. at 98; Brewer, 932 S.W.2d at 164. The
explanation need not be persuasive or even plausible. Purkett v. Elem, 514 U.S. 765, 767-68, 115
S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995); Bausley v. State, 997 S.W.2d 313, 316 (Tex.App.--Dallas
1999, pet. ref’d). Unless a discriminatory intent is inherent in the prosecutor’s explanation, the
reason offered will be deemed race-neutral. Brewer, 932 S.W.2d at 164. If the State provides a
facially valid explanation, then the burden of production shifts back to the defendant to establish that
the reasons given by the State were merely pretextual for racially motivated peremptory strikes. 
Mathis, 67 S.W.3d at 924. A defendant must establish pretext by a preponderance of the evidence. 
Salazar v. State, 818 S.W.2d 405, 409 (Tex.Crim.App. 1991).
Standard of Review
            We review a Batson challenge under the clearly erroneous standard and consider the record
in the light most favorable to the trial court’s ruling. Gibson v. State, 144 S.W.3d 530, 534
(Tex.Crim.App. 2004). We must determine whether the record, the State’s explanations, the
composition of the jury panel, and Appellant’s rebuttal and impeachment evidence results in a
definite and firm conviction that a mistake has been made. Whitaker v. State, 977 S.W.2d 869, 874
(Tex.App.--Beaumont 1998, pet. ref’d). Where, as here, the State offers an explanation and the trial
court rules, the issue of whether the defendant presented a prima facie case is moot. Simpson v.
State, 119 S.W.3d 262, 268 (Tex.Crim.App. 2003). Instead, the central issue is whether the State’s
explanation was facially valid. Purkett, 514 U.S. at 767. Because the trial judge is in the best
position to perceive discrepancies during jury selection, the trial court’s determination of a Batson
challenge will be given great difference on appeal. Mathis, 67 S.W.3d at 924.
The State’s Explanations
            Appellant contends the trial court erred in overruling his Batson objection because the State
struck two jurors on the basis of race. Appellant is African-American. Out of nine peremptory
strikes, the State struck six who were African-American. The trial court sustained Appellant’s
objection regarding four jurors and overruled it with regard to two others:
THE COURT: For the record, the Court observes that jurors No. 8, 13, 17, 23, 28,
and 29 were stricken by the State, are the ones you complain of. Bottom line, Mr.
Jordan, obviously a blind person could see that you have got an unbalanced use of
your strikes as far as the Batson issues are concerned. Would you please detail for
the Court the reasons you made your strikes.

. . .
 
[PROSECUTOR]: No. 17, Ms. Tillis, was the juror who you asked the question,
what does beyond a reasonable doubt mean, and she said it means he’s guilty until
proven innocent -- I mean, her answer was very convoluted and confused. And she
also has an arrest and was charged with theft.
 
THE COURT: There you go. That will work.
 
[PROSECUTOR]: No. 23, Mr. West, was asked about his -- what beyond a
reasonable doubt meant and he said it was almost one hundred percent beyond -- just
his answer to that was the reason we struck him. 

. . .
 
THE COURT: Now, West gave a definition as to what he thought reasonable doubt
was and we got three different reasons from three other people. Did you strike those
people for the same nonlegal definition for beyond a reasonable doubt? 
 
[PROSECUTOR]: It’s not the fact that they gave a definition or asked the questions. 
It’s just that his -- we felt that he would hold the State to a higher burden than is
required by law. Now, I mean, there is no legal definition of beyond a reasonable
doubt, but he was relatively kind of adamant in his opinion that it was close to one
hundred percent, removing all uncertainty. And that’s the reason we struck him. 
Plus, he’s unemployed. I mean, there are a couple of -- that’s the main reason, just
his definition. Based on that we thought he would hold us to a higher burden than
is required.
 
THE COURT: That’s at least a legal reason. He did say, you know, he would have
to be convinced beyond all certainty, which is near one hundred percent. The other
ones you are not even close to. 
 
[DEFENSE]: For the record I would like to reflect that there are other jurors on
there, I think juror No. 1, who was kept and is a juror on the case stated initially that
she thought it was almost one hundred percent, also. 
 
THE COURT: I’m agreeing to the six right off the bat.
 
[DEFENSE]: I’m talking about as far as the reason being for No. 23. He’s saying
that he thought it might be a higher burden. No. 1 said in an answer that was even
closer to one hundred percent and the State did not exercise a strike against that
individual. And I would like to say getting closer on 23 because of one particular
answer, if they didn’t treat the other jurors that are not in that race, then we feel that
even if -- if they are going to use something as a reason to try and rely on as being a
race-neutral reason, it needs to be applied equally and it wasn’t in this particular case
because other jurors made statements in regard to being absolutely sure, a hundred
percent correct or a hundred percent proven and those individuals were not struck,
so we submit as far as juror No. 23 goes, the State has failed to meet the burden on
that issue, also. 

. . .
 
THE COURT: Court will sustain Batson objections to Nos. 8, 13, 28, and 29. I’m
going to overrule the Batson objection to juror Nos. 17 and 23. I understand, Mr.
Johnson, that may or may not have been -- we have three different answers and the
State can interpret those answers any way they want to as a race-neutral reason,
requiring the State to have a higher burden. So I shall seat those jurors. The jury will
be comprised of Nos. 1, 8, 9, 10, 12, 13, 16, 18, 19, 21, 25, 28, and the alternate
being 29. If you would, bring in the jury panel. 

Juror No. 23
            Appellant argues Juror 23 was erroneously struck because the State’s reason was pretextual
and was not racially neutral. He contends the record demonstrates disparate treatment of Juror No.
1 and Juror No. 23. He argues that Juror No. 1 indicated she would also hold the State to a higher
burden of proof but she was not struck. 
            The decision to strike a particular venireperson is a fluid process based upon numerous
variables and it is not susceptible to rigid quantifications. Cantu v. State, 842 S.W.2d 667, 689
(Tex.Crim.App. 1992). It is unlikely two venirepersons on one panel will possess the same
objectionable attribute or character trait in precisely the same degree. Id. As a result, a prosecutor
may challenge one venireperson over another based upon such qualitative distinctions. Id. Disparate
treatment cannot be imputed into every situation where one of the State’s reasons for striking a
venire member would technically apply to another venire member whom the State found acceptable. 
Id. 
            Although Appellant contends there was disparate treatment, the answers given by the two
prospective jurors were dissimilar. During voir dire, Juror No. 1 stated:
THE COURT: Ms. Lohrmeyer, what is your definition of beyond a reasonable
doubt, to you?
 
JUROR: Beyond a reasonable doubt to me means that there’s no, I have no
uncertainty whatsoever as to the guilt or innocence of the defendant. 

Juror No. 23 stated:
 
[PROSECUTOR]: Okay. Well, what does it mean to you? What does beyond a
reasonable doubt mean to you, Mr. West?
 
JUROR: It means that as far as your case, if you can get close to one hundred
percent, you’ll convince the jury that he did it and also that he did not do it.


Juror No. 23 was adamant in holding the State to a standard of proof close to 100 percent. The
prosecutor also considered the juror unacceptable because he was unemployed. Striking a juror
because he is unemployed is race-neutral. Bridges v. State, 909 S.W.2d 151, 155-56 (Tex.App.--Houston [14th Dist.] 1995, no pet.). Because there are distinctions between the jurors other than
race, Appellant has not established disparate treatment.
Juror No. 17
            Appellant also contends the State’s reason for striking Juror No. 17 was pretextual. The
prosecutor emphasized that Juror No. 17 had difficulty explaining her response to the judge’s
question:
THE COURT: Tillis, can you help him out? Did you raise your hand?
 
JUROR: Yes, sir.

            THE COURT: Why?
 
JUROR: Because he’s here, he’s here to, with his attorney, prove that he’s innocent
and we are here to -- he’s presumed to be guilty, but he’s not guilty. He’s just
presumed because he’s here. I can’t express it.

But the State also mentioned that the juror was struck because her answer was convoluted and
confused and she had a prior arrest. Striking a juror because of a prior arrest is racially neutral. 
Dennis v. State, 151 S.W.3d 745, 750 (Tex.App.--Amarillo 2004, pet. ref’d). We conclude that
Appellant has not established pretext. Because the trial court’s findings were not clearly erroneous,
we overrule the first issue for review.
EXTRANEOUS OFFENSE
            In his second issue, Appellant complains that the trial court denied his motion for mistrial
after James testified about extraneous offenses. We review the denial of a motion for mistrial under
an abuse of discretion standard. Wood v. State, 18 S.W.3d 642, 648 (Tex.Crim.App. 2000). A
mistrial is only required when the improper question or reference is “clearly prejudicial to the
defendant and is of such character as to suggest the impossibility of withdrawing the impression
produced on the minds of the jurors.” Id. The asking of an improper question does not usually
require a mistrial because an instruction to disregard will generally cure the error. Ovalle v. State,
13 S.W.3d 774, 783 (Tex.Crim.App. 2000); Ladd v. State, 3 S.W.3d 547, 567 (Tex.Crim.App.
1999), cert. denied, 529 U.S. 1070, 120 S.Ct. 1680, 146 L.Ed.2d 487 (2000). The crux of
Appellant’s complaint is the following testimony by the victim’s mother: 
[PROSECUTOR]: What made you -- what made you come to believe your
daughter? 
 
[JAMES]: After December, later on after everything, she got tooken away, and we
were talking and he would start telling me about other charges. That’s what made
me start --
 
[PROSECUTOR]: Let me interrupt you.

The parties approached the bench and the witness was taken on voir dire outside of the presence of
the jury. In response to questioning by defense counsel, James testified that the District Attorney
told her Appellant had two rape charges against him but he was never indicted. She also said
Appellant told her a lot of things about his past. Although the trial court denied the mistrial, he
instructed the jury to disregard James’ last statement.
            For there to be evidence of an extraneous offense, the testimony must establish that a
particular offense was committed and that the defendant was connected to the offense. James v.
State, 89 S.W.3d 86, 89 (Tex.App.--Corpus Christi 2002, no pet.), citing McKay v. State, 707
S.W.2d 23 (Tex.Crim.App. 1985), cert. denied, 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). 
Here, James only commented that Appellant told her about “other charges.” She did not specifically
identify the type of charges or detail Appellant’s criminal conduct. Because the statement did not
establish an extraneous offense, the trial court did not abuse its discretion in denying a mistrial. We
overrule Issue Two.
EXCLUSION OF EVIDENCE
            In Issue Three, Appellant challenges the exclusion of evidence that the child’s uncle was
investigated for molesting her. He argues that the evidence was necessary to challenge an
assumption made by the forensic expert that the father of the Michelle’s child was not related to her. 
This assumption fails to account for the possibility that the child’s uncle may have been the father. 
                                                             Standard of Review
            We review evidentiary challenges for an abuse of discretion. Burden v. State, 55 S.W.3d
608, 615 (Tex.Crim.App. 2001). If the trial court’s ruling is correct on any theory of law applicable
to the case, it will be sustained. Delamora v. State, 128 S.W.3d 344, 365 (Tex.App.--Austin 2004,
pet. ref’d). As long as the ruling was within the zone of reasonable disagreement, the decision will
be upheld. Rachal v. State, 917 S.W.2d 799, 807 (Tex.Crim.App. 1996).
Order In Limine
            Prior to trial, the State filed a motion in limine asking the trial court to instruct defense
counsel to refrain from alluding to any reputation or opinion evidence regarding the past sexual
behavior of the victim without first approaching the bench. The following exchange occurred as
defense counsel cross-examined Sweetland:
[DEFENSE]: So let’s say that an individual may have been in some way, obviously
penetrated and assaulted by an relative, a blood relative of the mother of that child,
then all of your assumptions and your analysis in regards to the testimony you have
given today would basically fly out the window, would it not?
 
SWEETLAND: The information that I am testifying to is the relationships that are
given to me, that this was the mother, this was the child, and that relationship was
established, and then looking at Mr. Bird’s DNA to see if he could have possibly
contributed that DNA to the child. I was not examining any other evidence about
penetration nor anything to that manner. I was simply asked the question could he be
included as a possible father? And given the genetic information from Mr. Bird, he
does share the obligate paternal genetic markers and also at the areas where I could
not determine that, he shares at least one genetic marker. So, therefore, I had to
include him.

After redirect, the State rested its case. The trial court took a short recess and defense counsel
addressed the order in limine. 
[DEFENSE]: Judge, at this time I would like to ask, pursuant to the State’s Motion
in Limine, I was not allowed to put on questions in regard to this child being
molested by anyone other than the defendant and we do have information that this
child -- or the uncle of this child has been -- or the complainant in this case has been
investigated for alleged molestation of this child. And in light of the testimony by
this doctor that the possibility of a related individual could explain the genetic
makeup, I think that we ought to be allowed to at least go ahead and offer the jury
that information. 
 
THE COURT: Motion denied.

The Applicable Rules

            The Rules of Evidence provide: 
(a) Reputation or Opinion Evidence. In a prosecution for sexual assault or
aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual
assault, reputation or opinion evidence of the past sexual behavior of an alleged
victim of such crime is not admissible. 

(b) Evidence of Specific Instances. In a prosecution for sexual assault or
aggravated sexual assault, or attempt to commit sexual assault or aggravated sexual
assault, evidence of specific instances of an alleged victim’s past sexual behavior is
also not admissible, unless: 
 
(1) such evidence is admitted in accordance with paragraphs (c) and (d) of this rule; 
 
(2) it is evidence:
 
(A) that is necessary to rebut or explain scientific or medical evidence
offered by the State;
 
(B) of past sexual behavior with the accused and is offered by the accused
upon the issue of whether the alleged victim consented to the sexual behavior
which is the basis of the offense charged;
 
(C) that relates to the motive or bias of the alleged victim; 
 
(D) is admissible under Rule 609; or
 
(E) that is constitutionally required to be admitted; and 
 
(3) its probative value outweighs the danger of unfair prejudice. 

Tex.R.Evid. 412(a) and (b).

Preservation of Error

            To preserve a complaint that the trial court improperly excluded evidence, the complaining
party must provide the reviewing court with a record. See Tex.R.App.P. 33.1, 33.2; Tex.R.Evid.
103(a)(2). If the excluded evidence is not apparent from the context of the record, it must be brought
forward either through a timely offer of proof or a formal bill of exception. Id.; Shafer v. State, 82
S.W.3d 553, 555 (Tex.App.--San Antonio 2002, pet. ref’d). This rule enables an appellate court to
ascertain whether error, if any, was harmful. No attempt was made to question the witness outside
the presence of the jury for the purpose of preparing a bill. Without Sweetland’s responses to the
questions Appellant wanted to ask, we cannot determine the impact the testimony might have had. 
Because he has not preserved this issue for review, we overrule Issue Three.
DENIAL OF RIGHT TO REOPEN EVIDENCE
            In his final issue for review, Appellant complains of the trial court’s refusal to reopen the
evidence. We review the ruling for an abuse of discretion. See Peek v. State, 106 S.W.3d 72, 75
(Tex.Crim.App. 2003). Article 36.02 governs the right of a party to reopen a case. Peek, 106
S.W.3d at 75. A trial court should allow testimony to be introduced at any time prior to the
conclusion of the arguments. Tex.Code Crim.Proc.Ann. art. 36.02 (Vernon 1981). But a trial
court is required to reopen a case only if the proffered evidence is “necessary to a due administration
of justice.” Peek, 106 S.W.3d at 79. “Due administration of justice” means a judge should reopen
a case if the evidence would materially change the case in the proponent’s favor. Id.
            The following occurred during the State’s rebuttal in closing argument:
[PROSECUTOR]: May it please the Court. I want to clear up a few things that I
think were grossly misstated to you just a few minutes ago. 
 
First of all, as a matter of fact, I didn’t think I was going to have much to talk to you
about after Mr. Jordan talked until the defense attorney got up.
 
First of all, he tells you the law does not allow him to defend his client and that is
hogwash. What he is talking about is a rule in the evidence called (inaudible). 
That’s what we commonly refer to that as. It’s Rule 412 of our evidence. What that
rule says is, if you are prosecuting a man for raping a woman in that kind of an
incident, you can’t go and slam that woman’s credibility in every possible way by
digging up every person who has ever touched her, slept with her in order to malign
her, and make the jury hate her and think that she’s some sort of a streetwalker. 
That’s the rule of fact. That’s what that rule says.
 
How that rule would apply in this case is he is not allowed to go out there, if there is
evidence of something else, her kissing in a tire with a little boy, or somebody
inappropriately patting her on the bottom or her uncle giving her a bath that was
investigated.
 
[DEFENSE]: Judge, I’m going to object -- or I’m going to ask to reopen testimony,
if the Court is going to let him argue that that’s the extent of it. I ask to reopen.
 
THE COURT: I’m not going to reopen testimony. I’ll sustain your objection. You
are to disregard the last comment by the prosecutor. Counsel, move on or I’m going
to shut you down and send the jury out to deliberate.

We must overrule this argument for the same reason we overruled Issue Three. We can’t determine
whether the evidence would have materially changed the case in favor of the defense because the
testimony is not before us. Since Appellant did not show there would have been a material change,
he cannot demonstrate an abuse of discretion. We overrule Issue Four and affirm the judgment of
the trial court.

February 9, 2006                                                         
                                                                                    ANN CRAWFORD McCLURE, Justice
Before Barajas, C.J., McClure, and Chew, JJ.

(Do Not Publish)