NO.
12-06-00288-CR

 

                     IN THE COURT
OF APPEALS 

 

          TWELFTH
COURT OF APPEALS DISTRICT

 

                                TYLER, TEXAS

CHARLES
EDWARD JOHNSON,                '                 APPEAL
FROM THE 241ST

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                       '                 SMITH
COUNTY, TEXAS

                                                                                                                                         
                  

                                                      MEMORANDUM
OPINION

Charles
Edward Johnson appeals from his conviction for possession of a controlled
substance, cocaine, in an amount of one gram or more but less than four
grams.  In two issues, Appellant claims
that the trial court erred in denying his Batson[1]
motion and that the evidence was legally and factually insufficient to support
the conviction.  We affirm.

 

                                                               Background








On
June 30, 2005, Appellant was seen driving away from a known drug house in
Tyler, Texas.  Two City of Tyler police
officers stopped Appellant after they observed him turning without using a
signal.  Appellant drove into a
convenience store parking lot.  When the
officers approached Appellant=s
vehicle, they noticed that Appellant was extremely nervous.  Appellant exited the vehicle pursuant to the
officers= request,
and an officer conducted a Terry[2]
search of Appellant=s
person.  No weapons or contraband were
found during the Terry search. 
The officers then requested Appellant=s
consent to search the vehicle, but Appellant refused.

Another
officer arrived with a trained police dog. 
The dog walked around the vehicle and alerted to an area near the
location where the officers searched Appellant. 
Upon further inspection, the officers observed and recovered a small
quantity of crack cocaine wrapped in plastic lying on a tire mark from
Appellant=s
vehicle.  The officers concluded that the
crack cocaine was not there when Appellant drove into the parking lot because
it was not crushed, as it would have been if Appellant had driven over it. 

The
officers then searched Appellant=s
vehicle.  The officers did not find any
contraband in the vehicle, but they did find a piece of plastic tied in the way
contraband is tied into the corner of a plastic bag.  Video cameras in the police cars captured the
stop of Appellant=s vehicle
and the subsequent events.  Appellant is
not seen disposing of any contraband in the video of the stop, and no
contraband is seen falling from Appellant=s
clothing during the Terry search. 
No officer saw Appellant dispose of any contraband either before or
during the stop.

Appellant
was charged with possession of a controlled substance.  After voir dire examination, the State used
its peremptory strikes to strike the six African Americans who could have
served on the jury.  Appellant, who is
African American, made a Batson motion complaining of the State=s strikes.  After an evidentiary hearing, the trial court
denied the motion.

The
case then proceeded to trial.  The jury
found Appellant guilty and assessed punishment at ten years of imprisonment and
a fine of $5,000.  This appeal followed. 

 

Batson Motion

In
his first issue, Appellant contends that the trial court erred in denying his Batson
motion.  Specifically, Appellant alleges
that the State engaged in purposeful discrimination when it used its peremptory
challenges to excuse six AfricanBAmerican
individuals from the venire. 

Applicable
Law 








The
Equal Protection Clause of the Fourteenth Amendment to the United States
Constitution forbids a prosecutor from challenging potential jurors solely on
the basis of their race.  U.S. Const. Amend. XIV; Batson,
476 U.S. at 89, 106 S. Ct. at 1719.[3]  A defendant who makes a Batson challenge
must first make a prima facie showing that the prosecutor has used a peremptory
challenge to remove a potential juror on account of race.  Purkett v. Elem, 514 U.S. 765,
767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834 (1995).  A defendant may establish a prima facie case
solely on evidence concerning the prosecutor=s
exercise of peremptory challenges at trial. 
Batson, 476 U.S. at 96, 106 S. Ct. at 1723.  To establish such a case, the defendant first
must show that he is a member of a cognizable racial group and that the
prosecutor has exercised peremptory challenges to remove from the venire
members of the defendant=s
race.  Id.[4]  He must also show that these facts and any
other relevant circumstances raise an inference that the prosecutor used that
practice to exclude the veniremen from the petit jury on account of their race.  Id.   

Once
the defendant has made a prima facie showing, the burden shifts to the state to
come forward with a race neutral explanation for its strikes.  Batson, 476 U.S. at 97B98, 106 S. Ct. 1723B24. 
If the state offers race neutral reasons for the strikes, the defendant
is afforded the opportunity to rebut those explanations.  Shuffield v. State, 189 S.W.3d
782, 785 (Tex. Crim. App. 2006).  The
defendant carries the burden to prove purposeful discrimination.  Id. 








Although
a prima facie case of discrimination can be supported by the differential of
strikes made by the prosecution among various races and ethnic groups, the
critical step in the analysis of a Batson challenge is the
prosecutor=s reason
for any disparate striking of potential jurors based on similar responses to
questions posed to the venire panel.  See
MillerBEl
v. Dretke, 545 U.S. 231, 241, 125 S. Ct. 2317, 2325, 162 L. Ed. 2d 196
(2005) (AIf a
prosecutor=s
proffered reason for striking a black panelist applies just as well to an
otherwiseBsimilar
nonblack who is permitted to serve, that is evidence tending to prove
purposeful discrimination to be considered at Batson=s third step.@).  The credibility of the prosecutor=s reasons for disparate striking of
jurors can be measured by Athe
prosecutor=s
demeanor; by how reasonable, or how improbable, the explanations are; and by
whether the proffered rationale has some basis in accepted trial strategy.@ 
MillerBEl
v. Cockrell, 537 U.S. 322, 339, 123 S. Ct. 1029, 1040, 154 L. Ed. 2d
931 (2003). 

We
will only disturb a trial court=s
ruling on a Batson motion if it is Aclearly
erroneous.@  Guzman v. State, 85 S.W.3d 242, 254
(Tex. Crim. App. 2002).  Generally, a
fact finder=s
decision is clearly erroneous when it leaves an appellate court with a Adefinite and firm conviction that a
mistake has been committed.@
 Id. (citing United
States v. Fernandez, 887 F.2d 564, 567 (5th Cir. 1989)).  The clearly erroneous standard is an
especially rigorous one where the findings are based primarily on oral testimony
and the trial judge has viewed the demeanor of the witnesses.  Fernandez, 887 F.2d at 567;
see also Alexander v. State, 866 S.W.2d 1, 8 (Tex. Crim. App. 1993).

We
review the evidence in the light most favorable to the trial court=s ruling and afford great deference to
that ruling.  See Jasper v.
State, 61 S.W.3d 413, 422 (Tex. Crim. App. 2001).  Furthermore, a claim that the proffered race
neutral reasons for strikes are pretextual presents a question of fact, not
law, and the trial court is in the best position to evaluate such claims.  See Gibson v. State, 144
S.W.3d 530, 534 (Tex. Crim. App. 2004).

Analysis

At
trial, Appellant objected that the State had struck the six AfricanBAmerican members of the prospective
jury panel.  The State responded that it
had legitimate, race neutral reasons for the strikes.  Appellant then responded that one of the race
neutral reasons proffered by the State (having a family member charged with a
crime) was not exercised consistently.

We
summarize the State=s
presentation at the Batson hearing as follows:

African-American
Jurors Struck by the State








Juror
number 3 was African American.  During
voir dire examination, she stated that a family member had been charged with a
drug offense.  She was not sure if this
family member had been treated fairly. 
Additionally, from the voir dire examination, the State concluded that
she either did not understand or did not agree with the law regarding the
definition of possession.

Juror
number 7 was African American.  The State
believed that juror number 7 was not being attentive during voir dire.

Juror
number 16 was African American.  During
voir dire examination, she stated that a family member had been charged with a
drug offense.  During the Batson
hearing, the prosecutor stated that she had shrugged and said AI guess@
when asked if her family member had been treated fairly by law
enforcement.  The record does not show
whether juror number 16 shrugged when answering, but it shows that she did
state AYes@ when asked if her family member had
been treated fairly. 

Juror
number 19 was African American.  The
State said that it struck juror number 19 because she failed to accurately fill
out her jury card information sheet and because she was unemployed. 

Juror
number 25 was African American.  During
voir dire examination, he stated that a family member had been charged with a
drug offense and another family member had been charged with theft. 

Juror
number 35 was African American.  During
voir dire examination, she stated that a family member had been charged with
manslaughter and another family member had been charged with robbery.  Juror number 35 was unemployed. 

Other
Jurors Struck by the State

Juror
number 2 was not African American. 
During voir dire examination, she stated that a family member had been
charged with a drug offense. 

Juror
number 24 was not African American. 
During voir dire examination, she stated that a family member had been
charged with a drug offense and driving while intoxicated. 

Juror
number 28 was not African American. 
During voir dire examination, he stated that a distant family member had
been charged with a drug offense.  He
also was a former assistant district attorney who left on what the State
described as poor terms. 

Juror
number 34 was not African American. 
During voir dire examination, he stated that friends and a family member
had been charged with several offenses. 

 








Jurors
Not Struck by the State

Juror
number 13 was not African American. 
During voir dire examination, juror number 13 stated that a family
member had been charged with a drug offense. 
However, she had served on a previous jury in Smith County, and the
prosecutor said that the State had a Agood@ previous jury card for her.  

Juror
number 32 was not African American. 
During voir dire examination, he stated that a family member had been
charged with a drug offense.  But he also
stated that the family member had been treated too leniently by law
enforcement. 

Juror
number 37 was not African American. 
Juror number 37 was unemployed, though he listed his occupation as being
a carpet cleaner.  Further, he had two former
nephews who were in law enforcement. 








Unless
a discriminatory intent is inherent in the prosecutor=s
explanation, the reason for a peremptory strike will be deemed race
neutral.  See Shuffield,
189 S.W.3d at 785.  The State=s proffered reasons for striking the
six AfricanBAmerican
prospective jurors are facially race neutral and do not exhibit an inherent
discriminatory intent.  The exercise of
peremptory strikes on prospective jurors because they have had family members
charged or convicted of crimes is race neutral. 
Dorsey v. State, 940 S.W.2d 169, 175 (Tex. App.BDallas 1996, no pet.).  Inaccurate or incomplete juror information
forms are likewise race neutral bases for using peremptory strikes on
prospective jurors.  Jones v. State,
845 S.W.2d 419, 421 (Tex. App.BHouston
[1st Dist.] 1992, pet. ref=d).[5]  Juror inattentiveness is another racially
neutral basis for exercising peremptory strikes.  Dorsey, 940 S.W.2d at 175.  Finally, the exercise of peremptory strikes
on prospective jurors because they are unemployed is race neutral.  Bridges v. State, 909 S.W.2d
151, 156 (Tex. App.BHouston
[14th Dist.] 1995, no pet.).  Therefore,
there was no discriminatory intent inherent in the reasons the State offered
for its strikes.

As
Appellant correctly states, however, the State did not strike every individual
who had a family member who had been arrested, and two white jurors who had
family members who had been arrested were allowed to serve on the jury.  Additionally, the State did not strike juror
number 37, who was unemployed, despite giving unemployment as a reason for
striking jurors number 19 and number 35. 
But the State proffered race neutral reasons for not striking the three
despite its stated preference for employed jurors who had not had relatives who
had been arrested.  Juror number 13 had
previously served on a jury in Smith County, and the State believed, based on
information it maintained about prior jury service, that she was a desirable
juror.[6]  Juror number 32 stated that his family member
had been treated too leniently by law enforcement when asked by the State.  The State asked the same question to all of
the prospective jurors that had family members charged with the crime.  None of the AfricanBAmerican
jurors whose family members had been arrested stated that their family member
had been treated too leniently.  Juror
number 37, who was unemployed, had relatives who worked in law enforcement, a
race neutral characteristic that could have overcome the State=s preference for employed jurors.  Finally, the State also struck three white
jurors because they had family members who had been arrested.  








The
State was well prepared for the Batson hearing.  One of two scenarios is possible.  Either the prosecutor cynically devised a
voir dire strategy to bring out plausible race neutral reasons to strike every
prospective AfricanBAmerican
juror, and then checked those reasons against the rest of the venire to avoid
the appearance of pretext; or the State=s
race neutral preferences, with reasonable exceptions, simply happened to cause
it to strike all the African Americans in the strike zone, finding exceptions
for none of them, while finding exceptions for white jurors.  The determination of which scenario is
accurate largely depends on the trial court=s
assessment of the credibility of the prosecutor.  That is a determination best made by the
trial court.  

Having
reviewed the entire record, we conclude the court=s
decision to deny Appellant=s
Batson motion was not clearly erroneous.  Even though a prima facie case of racial
discrimination was established, the State provided race neutral explanations
for its use of peremptory challenges, and Appellant failed to carry his burden of
persuasion that the stated reasons were pretextual.  Giving, as we must, deference to the trial
court=s ruling,
we do not have a Adefinite
and firm conviction that a mistake has been committed.@
 Guzman, 85 S.W.3d at
254.  We overrule Appellant=s first issue.

 

Sufficiency of the Evidence

In
his second issue, Appellant argues that the evidence is legally and factually
insufficient to support the verdict. 
Specifically, Appellant argues that there was insufficient evidence that
he possessed cocaine.

Standard
of Review

The
due process guarantee of the Fourteenth Amendment requires that a conviction be
supported by legally sufficient evidence. 
See Jackson v. Virginia, 443 U.S. 307, 315B16, 99 S. Ct. 2781, 2786B87, 61 L. Ed. 2d 560 (1979); Ross
v. State, 133 S.W.3d 618, 620 (Tex. Crim. App. 2004); Willis v.
State, 192 S.W.3d 585, 592 (Tex. App.BTyler
2006, pet. ref=d).  Evidence is not legally sufficient if, when
viewing the evidence in a light most favorable to the verdict, we conclude that
no rational trier of fact could have found the essential elements of the
offense beyond a reasonable doubt.  See
Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; see also Johnson
v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).








While
legal sufficiency review is all that is required by the U.S. Constitution, the
Texas Court of Criminal Appeals has determined that the Texas Constitution
requires review of the factual sufficiency of the evidence.  Clewis v. State, 922 S.W.2d
126, 129B30 (Tex.
Crim. App. 1996).  We review the factual
sufficiency of the evidence without the light most favorable to the verdict,
and we determine whether, considering all the
evidence in a neutral light, the evidence supporting the conviction is too weak
to withstand scrutiny or the great weight and preponderance of the evidence
contradicts the jury=s verdict to the extent that the verdict is clearly
wrong and manifestly unjust.  See Watson
v. State, 204 S.W.3d 404, 414B15, 417 (Tex. Crim. App. 2006).  In doing so, we must first assume that
the evidence is legally sufficient under the Jackson
standard.  See Clewis, 922
S.W.2d at 134.  We then consider all of
the evidence that tends to prove the existence of the elemental fact in dispute
and compare it to the evidence that tends to disprove that fact.  See Santellan v. State,
939 S.W.2d 155, 164 (Tex. Crim. App. 1997).

Under
either standard, our role is that of appellate review, and the fact finder is
the judge of the weight and credibility of a witness=s
testimony.  Wesbrook v. State,
29 S.W.3d 103, 111B12 (Tex.
Crim. App. 2000).  The fact finder may
choose to believe all, some, or none of a witness=s
testimony.  Sharp v. State,
707 S.W.2d 611, 614 (Tex. Crim. App. 1986). 
With respect to our factual sufficiency review, we are authorized to
disagree with the jury=s
determination, even if probative evidence exists that supports the verdict, see
Clewis, 922 S.W.2d at 133, but our evaluation should not
substantially intrude upon the jury=s
role as the judge of the weight and credibility of witness testimony.  Santellan, 939 S.W.2d at 164. 

Applicable Law and Analysis








As charged in the indictment, the State was required
to prove that Appellant possessed a controlled substance, namely cocaine, in an
amount of one gram or more but less than four grams.  See Tex.
Health & Safety Code Ann. ' 481.115(c)
(Vernon 2006).  To support a conviction
for possession of a controlled substance, the State must show (1) that the
accused exercised actual care, control, or custody of the substance, (2) that
he was conscious of his connection with it, and (3) that he possessed the
substance knowingly or intentionally.  See
id.; Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995).  The evidence used to satisfy
these elements can be either direct or circumstantial.   Brown, 911 S.W.2d at 747.  Be it by direct or circumstantial evidence,
the State must establish that the accused=s
connection with the substance was more than just fortuitous.  Id. One way to establish this
connection is by affirmative links between the accused and the contraband. See
Evans v. State, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006).  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct and
circumstantial, that proves possession  Id.








Among
the nonexclusive factors that may be considered when evaluating affirmative
links are (1) whether the contraband was in plain view or recovered from an
enclosed place, (2) whether the accused was the owner of the premises or had
the right to possess the place where the contraband was found, or was the owner
or driver of the automobile in which the contraband was found, (3) whether the
accused was found with a large amount of cash, (4) whether the contraband was
conveniently accessible to the accused or found on the same side of the vehicle
as the accused was sitting, (5) whether the contraband was found in close
proximity to the accused, (6) whether a strong residual odor of the contraband
was present, (7) whether the accused possessed other contraband when arrested,
(8) whether paraphernalia to use the contraband was in view or found on the
accused, (9) whether the physical condition of the accused indicated recent
consumption of the contraband in question, (10) whether conduct by the accused indicated a consciousness of guilt, (11) whether the
accused attempted to escape or flee, (12) whether the accused made furtive
gestures, (13) whether the accused had a special connection to the contraband,
(14) whether the occupants of the premises gave conflicting
statements about relevant matters, (15) whether the accused made incriminating
statements connecting himself to the contraband, (16) the quantity of the
contraband, and (17) whether the accused was observed in a suspicious place
under suspicious circumstances. See Lassaint v. State, 79 S.W.3d
736, 740-41 (Tex. App.BCorpus
Christi 2002, no pet.).             Here,
Appellant was seen driving away from a known drug house in a known high drug
area.  One of the officers testified that
Appellant was extremely nervous, more nervous than most people he
questioned.  Further, the contraband was
found at the location where the Terry search was conducted.  Inside Appellant=s
vehicle, police found plastic with a knot tied in it consistent with a piece of
plastic that could be used to hold contraband. 
Finally, the contraband introduced into evidence was found lying where
Appellant=s tire
would have crushed it if it had been there prior to Appellant=s driving into the convenience store
parking lot.  However, the contraband was
not crushed.  The contraband was tested
and determined to be crack cocaine in an amount of one gram or more and less
than four grams.  Viewing all of the evidence
in the light most favorable to the jury=s
verdict, there is legally sufficient evidence for a rational jury to conclude
that Appellant committed the offense of possession of a controlled substance,
namely cocaine, in an amount of one gram or more but less than four grams.  

With
respect to our review of the factual sufficiency of the evidence, Appellant
directs our attention to evidence that he argues does not support the jury=s verdict.  First, the video does not show Appellant
disposing of contraband and does not show contraband falling from Appellant=s person during the Terry search.  The officers involved in the stop of
Appellant did not see Appellant dispose of any contraband either before or
during the stop.  The State did not show
that the tied plastic found inside Appellant=s
vehicle contained any residue of a controlled substance or that the plastic
containing the crack cocaine found outside the vehicle had Appellant=s fingerprints on it.  Although the officers saw Appellant driving
away from a known drug house, they did not actually see Appellant leaving the
house.  Appellant did not appear to be
under the influence of crack cocaine or any other illegal drug.  Finally, Appellant did not have a large
amount of cash with him.

But
we must consider this evidence along with the evidence that supports the verdict.  The video did not show the entire scene and
did not show all of Appellant at all times. 
Thus, the video is not conclusive evidence of Appellant=s lack of guilt.  The video, as well as the additional factors
raised by Appellant, were factors to be considered by the jury.  The testimony that the cocaine had not been
run over combined with the fact that Appellant had been immediately next to the
area where it was found is convincing evidence that he possessed the cocaine.  The jury=s
determination that Appellant possessed the cocaine, after our review of the
record as a whole, is not so troubling that we conclude that the proof of guilt
is so obviously weak or is otherwise so greatly outweighed by contrary proof as
to render Appellant=s
conviction clearly wrong or manifestly unjust. 
Therefore, we hold that the evidence is factually sufficient to support
the verdict.  We overrule Appellant=s second issue.

 








Disposition

Having
overruled Appellant=s two
issues, we affirm the judgment of the trial court.

 

 

    BRIAN HOYLE   

   Justice

 

 

Opinion delivered
July 25, 2007.

Panel consisted of Worthen, C.J.,
Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

                                                            (
DO NOT PUBLISH)











 
 
 
 
 
 
 
 
 
 
 
 
 
  
 




 

 

 

 

[COMMENT1] 

                                               COURT OF APPEALS

                    TWELFTH COURT OF
APPEALS DISTRICT OF TEXAS

                                                             JUDGMENT

 

                                                                 JULY
25, 2007

 

                                                         NO. 12-06-00288-CR

 

                                                CHARLES
EDWARD JOHNSON,

                                                                      Appellant

                                                                            V.

                                                       THE
STATE OF TEXAS,

                                                                      Appellee

 

                                                                                                                                                                                                                                        


                                        Appeal from the 241st Judicial District Court

                                    of Smith County, Texas. (Tr.Ct.No.
241-0692-06)

                                                                                                                                                                                                                                        


 

THIS CAUSE came to be heard on the
appellate record and briefs filed herein, and the same being inspected, it is
the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and
DECREED that the judgment of the court below be in all things affirmed,
and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.








                                   THE STATE OF TEXAS

                          M
A N D A T E

                                 *********************************************

TO THE 241ST
DISTRICT COURT of SMITH COUNTY, GREETING: 

Before
our Court of Appeals for the 12th Court of Appeals District of Texas, on the
25th day of July, 2007, the cause upon appeal to revise or reverse your
judgment between

 

                                       CHARLES EDWARD JOHNSON, Appellant

 

                                  NO.
12-06-00288-CR; Trial Court No. 241-0692-06

 

                                                    Opinion
by Brian Hoyle, Justice.

                                                                              

                                                THE
STATE OF TEXAS, Appellee

 

was determined; and therein our
said Court made its order in these words:

 

ATHIS CAUSE came to be heard on the
appellate record and briefs filed herein, and the same being inspected, it is
the opinion of this court that there was no error in the judgment.

 

It is therefore
ORDERED, ADJUDGED and DECREED that the judgment of the court below be in all
things affirmed, and that this decision be certified to the court below for
observance.@

 

WHEREAS, WE
COMMAND YOU to observe the order of our said Court of Appeals for the
Twelfth Court of Appeals District of Texas in this behalf, and in all things
have it duly recognized, obeyed, and executed.

 

WITNESS, THE
HONORABLE JAMES T. WORTHEN, Chief Justice of our Court of Appeals for the
Twelfth Court of Appeals District, with the Seal thereof affixed, at the City
of Tyler, this the ______ day of __________________, 200____.

 




 
 
 
 
 
 
 
 
 
 
 
 
 
  
 


CATHY S. LUSK, CLERK

 

 

By:_______________________________

     Deputy Clerk











[1] Batson v. Kentucky, 476 U.S. 79, 106 S.
Ct. 1712, 90 L. Ed. 2d 69 (1986).





[2]
Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

 





[3]
The Texas Legislature codified the Batson
rule in Article 35.261 of the Texas Code of Criminal Procedure, but Appellant
does not present a specific claim under that article.





[4]
In Batson the Supreme Court
reaffirmed that racial discrimination in the use of peremptory challenges
denied a defendant the equal protection of the law guaranteed by the U.S.
Constitution.  Batson, 476
U.S. at 85, 106 S. Ct. at 1716.  Since
that time, the issue of discrimination in the use of peremptory strikes has
also come to be understood in terms of a denial of the equal protection rights
of prospective jurors.  See Powers
v. Ohio, 499 U.S. 400, 409B11, 111
S. Ct. 1364, 1370-71, 113 L. Ed. 411 (1991). 
In Powers the Supreme Court held that an individual
defendant had standing to complain of this type of violation, and so the
requirement that the defendant be of the same cognizable racial group as the
juror was removed.  Id.,
499 U.S. at 415B16, 111 S. Ct. at 1373B74.
Furthermore, the cognizability of discrimination in the jury selection process
has been extended to categories beyond race. 
See, e.g., Guzman v. State, 85 S.W.3d 242,
245‑46 (Tex. Crim. App. 2002) (recognizing that ABatson@ claim
may be brought to challenge discriminatory exclusion of jurors on the basis of
gender or ethnicity.)  Because Appellant
brings only a Batson claim and because he and the jurors who were
struck are of the same cognizable racial group, we decide this case using the Batson
standards.





[5]
The State argued that juror numbers 7 and 19
failed to fully and accurately complete their juror questionnaires.  With respect to juror number 19, this appears
to be a reasonable basis for a strike. 
She stated in her questionnaire that she had served on a jury but said
she had not when asked about it.  Juror
number 7 completed the entire form, but did not fill in the box asking for her
race.  The State argued that juror number
7 did not comply with state law when she did not fill in the box for her race
on her juror questionnaire.  While it is
required that the juror questionnaire ask a prospective juror=s race, and it is required that a juror answer the
questions, see Tex. Gov=t Code Ann. '' 62.0132(c)(1), (d) (Vernon 2006), the essential
purpose of juror questionnaires is to provide basic information about
jurors.  See Barajas v.
State, 93 S.W.3d 36, 45 (Tex. Crim. App. 2002) (Womack, J.,
concurring).  Several cases, including
those cited by the State, stand for the proposition that failure to complete
the form can be a race neutral reason for a strike.  But those cases revolve around an inference
that a juror=s failure may be related to a lack of ability to read
or write or follow basic instructions.  See
Tompkins v. State, 774 S.W.2d 195, 205 (Tex. Crim. App. 1987), aff=d, Tompkins
v. Texas 490 U.S. 754, 109 S. Ct. 2180, 104 L. Ed. 2d 834 (1989)
(reasonable to seek to avoid Aliteracy problems@); Jones,
845 S.W.2d at 421 (careless or incomplete preparation of the form is an
appropriate race neutral factor for a prosecutor to consider).  No such inference can be drawn in this case.  Juror number 7 completed the remainder of the
card, indicated that she had a postgraduate degree, and was employed by an area
school district.  The failure to fill in
the race box could be for any of a number of reasons but, under the
circumstances, it would not have been reasonable to conclude that the juror
lacked familiarity with written English language.  The State did not ask juror number 7 about
her failure to fill in the blank and did not explain what inference it drew
from her failure to fill in one box on her form.  The State did offer another reason for its
strike of juror number 7, her inattentiveness. 
Appellant did not challenge this reason, and so we need not consider
this further.





[6] The State offered into evidence an exhibit entitled ADA Jury Record,@ which
recorded juror number 13's prior jury service. 
The jury record simply states that juror number13 had served on a jury
in 1991 and, based on the fact that the jury convicted the defendant but could
not agree on the punishment, the person who completed the card concluded that
juror number13 would be a good juror for the State on guiltBinnocence and not such a good juror on punishment.















 [COMMENT1]J.1       CIVIL - AFFIRMED

                 
Vanilla judgment

                 
Appellant & Sureties to pay costs