PD-0176-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/13/2015 8:29:59 AM
Accepted 2/13/2015 10:13:06 AM
ABEL ACOSTA
CLERK

PD-0176-15

NO. _____

IN THE COURT OF CRIMINAL APPEALS

OF TEXAS

DAVID AUSTIN PRICE, Appellant

VS.

THE STATE OF TEXAS, Appellee

On Petition for Discretionary Review from

The Fourteenth Court of Appeals

in No. 14-13-00487-CR Affirming

The 185th Criminal District Court of

Harris County, Texas, Cause No. 1368261,

Honorable Susan Brown, Judge Presiding

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

February 13, 2015

ABEL ACOSTA, CLERK

Crespin Michael Linton
440 Louisiana, Suite 900
Houston, Texas 77002
Texas Bar No. 12392850
(713) 236-1319
(713) 236-1242 (FAX)
crespin@hal-pc.org
Counsel for Appellant

Oral Argument Waived

**INDEX**

PAGE

Index 2

Names of All Parties 3

List of Authorities 4

Statement Regarding Oral Argument 5

Statement of the Case 5

Procedural History 5

GROUND FOR REVIEW 6

THE COURT OF APPEALS ERRED IN DETERMINING THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR THEFT

Reason for Review 6

Statement of Facts 7

Arguments and Authorities 9

Prayer for Relief 12

Certificate of Compliance 12

Certificate of Service 12

Appendix A 13
  Opinion, Price *v. State*

# NAMES OF ALL PARTIES

Pursuant to Tex. R. App. P. 38.1(a), the following are interested parties:

Presiding Judge:     Susan Brown
185th Criminal District Court
1201 Franklin Street, 17th Floor
Houston, Texas 77002

Appellant:       Mr. David Price
5810 Coral Ridge
Houston, Texas 77069

Attorneys for State:    Mr. Stan Clark
District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

           Mr. Alan Curry (on appeal)
District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

Attorneys for Appellant:  Mr. Lott J. Brooks, III (trial)
1314 Texas Ave., Suite 710
Houston, Texas 77002

           Mr. Crespin Michael Linton (appeal)
440 Louisiana Street, Suite 900
Houston, Texas 77002

## LIST OF AUTHORITIES

CASES                                                           PAGE


**Brooks v. State**, 323 S.W.3d 893……………………………          10
(Tex. Crim. App. 2010)



**Wirth v. State**, 361 S.W.3d 694……………………………          11
(Tex. Crim. App. 2012)




STATUTES

Tex. Pen. Crim., Section 31.03(e)(7) ..……………….………….          10




RULES

Tex. R. App. Proc., Rule
38.1(a)…………………………………………………………..          3

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 39.1, Appellant waives the right to oral argument.

## STATEMENT OF THE CASE

The Appellant was charged with Aggregate Theft Over $200,000.00. After a jury trial, the jury found Appellant guilty of Aggregate Theft Over $200,000.00. The jury sentenced him to a term of 5 years in the Texas Department of Criminal Justice - Institutional Division.

## PROCEDURAL HISTORY

All points of error were affirmed by the Fourteenth Court of Appeals on January 15, 2015, in a published opinion. No motion for rehearing was filed.

**GROUND FOR REVIEW**

THE COURT OF APPEALS ERRED IN DETERMINING THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR THEFT.

**REASON FOR REVIEW**

THE COURT OF APPEALS HAS DEPARTED SO FAR FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS OR SO FAR SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THE COURT OF CRIMINAL APPEAL'S POWER OF SUPERVISION.

## STATEMENT OF FACTS

In 2007, Appellant and his business partner, Wesley Simmons, founded a small dental clinic known as Lupe's Wonderful Smiles. After they submitted the appropriate documentation to a state agency, the dental clinic qualified as a dental Medicaid provider. Appellant and Simmons then hired a dentist named Dr. Joon Kim to serve as the dentist for the clinic. Dr. Kim treated the patients and forwarded the dental charts to Appellant and Simmons for billing to Medicaid. Although Appellant was involved with the billing process when the clinic first opened, that responsibility shifted entirely to Simmons.

Dr. Kim left the clinic in June of 2008 after disagreements with Appellant and Simmons, but Medicaid was billed for services using Dr. Kim's Medicaid provider number for the next 2 years with various temporary dentists performing the dental services. After a complaint to Medicaid from a former patient about incorrect billing practices, Medicaid auditors determined that at least $1.2 million in represented services had never been rendered.

Simmons pleaded guilty to Theft and testified at Appellant's trial that Simmons was responsible for the fraudulent billing. Simmons also testified about his extravagant spending with the fraudulently acquired money from the dental clinic. Appellant testified that he did not perform fraudulent billing and did not financially gain from the fraud. The State argued through its witnesses that Appellant knew that the clinic was receiving an inordinate

amount of money from Medicaid, but Appellant chose to ignore Simmons' spending habits, used company accounts for his own personal expenses, and never reviewed the clinic's bank statements even though he was a founding partner.

## ARGUMENTS AND AUTHORITIES

**GROUND FOR REVIEW ONE**

THE COURT OF APPEALS ERRED IN DETERMINING THAT THE EVIDENCE WAS SUFFICIENT TO SUPPORT APPELLANT'S CONVICTION FOR THEFT.

**REASON FOR REVIEW**

THE COURT OF APPEALS HAS SO FAR DEPARTED FROM THE ACCEPTED AND USUAL COURSE OF JUDICIAL PROCEEDINGS OR SO FAR SANCTIONED SUCH A DEPARTURE BY A LOWER COURT, AS TO CALL FOR AN EXERCISE OF THE COURT OF CRIMINAL APPEAL'S POWER OF SUPERVISION.

## DISCUSSION

The Court of Appeals incorrectly held that the evidence was sufficient to convict Appellant of Theft Over $200,000.00.

The test for reviewing the insufficiency of the evidence where a defendant has been found guilty is for the reviewing court to determine whether, after viewing the relevant evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Brooks v. State**, 323 S.W.3d 893 (Tex. Crim. App. 2010)

Section 31.03 (e)(7) of the **Texas Penal Code** provides that a person commits the first degree felony offense of Theft if he unlawfully appropriates over $200,000 of property with the intent to deprive the owner of the property. (West 2013) "A claim of theft made in connection with a contract, however, requires proof of more than intent to deprive the owner of property and subsequent appropriation of the property. In that circumstance, the State must prove that the appropriation was the result of a false pretext, or fraud. Moreover, the evidence must show that the accused intended to deprive the owner of the property at the time the

10

property was taken." **Wirth v. State**, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

The Court of Appeals erred in its analysis by determining that the State proved Appellant's theft beyond a reasonable doubt even when viewing the following evidence in the light most favorable to the verdict: 1) Appellant did not perform the fraudulent billing, 2) Appellant was not active participant in the dental business, 3) Appellant earned the $203,000.00 attributable to him as salary over the course of 3 ½ years, and 4) The State provided no proof that Appellant spent the company money for personal expenses unlike Simmons did. Therefore, the Court of Appeals erred in determining that Appellant the evidence was sufficient to convict Appellant of Theft Over $200,000.00.

11

## PRAYER FOR RELIEF

For the reasons stated, Appellant Price prays the Court to grant his Petition For Discretionary Review, and after considering the grounds for review, reverse the judgment of the court of appeals and grant the relief requested.

Respectfully submitted,
 _/s/ Crespin Michael Linton_
Crespin Michael Linton
440 Louisiana, Suite 900
Houston, Texas  77002
Texas Bar No.  12392850
(713) 236-1319
(713) 236-1242 (Fax)

## CERTIFICATE OF COMPLIANCE

I hereby certify that Appellant's Brief, as calculated under Texas Appellate Rule of Appellate Procedure 9.4, contains 1,346 words as determined by the Word program used to prepare this document.

 _/s/ Crespin Michael Linton_
Crespin Michael Linton

## CERTIFICATE OF SERVICE

I do hereby certify that on this the 13th day of February 2015, a true and correct copy of the foregoing Appellant's Brief was served by E-service in compliance with Local Rule 4 of the Court of Appeals or was served in compliance with Article 9.5 of the Rules of Appellate Procedure delivered to the Assistant District Attorney of Harris County, Texas, 1201 Franklin Street, Suite 600 Houston, TX 77002 at curry_alan@dao.hctx.net and the State Prosecuting Attorney, P.O. Box 12405 Austin, Texas 78711 at information@spa.texas.gov.

 __/s/_ Crespin Michael Linton___
Crespin Michael Linton

## <u>APPENDIX A</u>

Opinion In the Court of Appeals

For The Fourteenth District of Texas

No. 14-13-00487-CR

*David Austin Price,*
                                        Appellant

v.

*State of Texas*,
                                        Appellee

Affirmed and Opinion filed January 15, 2015.



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00487-CR

---

### DAVID AUSTIN PRICE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 185th District Court
Harris County, Texas
Trial Court Cause No. 1368261**

---

## OPINION

Appellant was found guilty of unlawfully appropriating at least $200,000. The only question on appeal is whether the evidence is legally sufficient to support the conviction. We conclude that the evidence is sufficient and we affirm the trial court's judgment.

## BACKGROUND

This case is about a scheme of fraudulently billing Medicaid. The fraud occurred in a small dental clinic known as Lupe's Wonderful Smiles, which was founded by appellant and his business partner, Wesley Simmons, neither of whom is a dentist.

In 2007, appellant and Simmons submitted an application to the Texas agency responsible for administering Medicaid, requesting that their clinic be registered as a Medicaid provider. By signing the application form, appellant and Simmons agreed to comply with all Medicaid rules and regulations. One such rule required that they would certify the correctness of any claims they submitted to Medicaid. The Texas agency approved the application, even though it was incomplete, and despite regulations prohibiting the ownership of clinics by non-dentists.

After registering the clinic as a Medicaid provider, appellant and Simmons hired Dr. Joon Kim to serve as the dentist of the clinic. The parties agreed that Dr. Kim would have complete control over the practice of dentistry while appellant and Simmons handled the business side of the operation.

Dr. Kim treated patients with all types of insurance, but his clients were primarily Medicaid recipients. After recording the services he performed, Dr. Kim would forward his charts to appellant and Simmons, who then proceeded to bill Medicaid. Appellant was involved with the billing process when the clinic first opened, but over time, that responsibility shifted entirely to Simmons.

Dr. Kim eventually grew frustrated with the operation because appellant was seldom in the office. Dr. Kim was also concerned because he lacked access to the clinic's bank statements. Dr. Kim devised a plan to leave the clinic and open his

2

own practice, and he shared that information with one of his dental assistants. When appellant received word of this intent, he became angry and physically shoved Dr. Kim out the door. Dr. Kim left the clinic in June 2008.

After Dr. Kim's exit, appellant and Simmons hired temporary dentists to work at the clinic. Before settling on a permanent dentist to hire, they continued to submit bills using Dr. Kim's Medicaid provider number, falsely representing that Dr. Kim was the dentist who had rendered the services. Simmons approached appellant about this continued use of Dr. Kim's Medicaid provider number, and appellant told Simmons to keep the business "under the radar" until a new dentist could be hired.

Appellant and Simmons stopped using Dr. Kim's Medicaid provider number in May 2010, when they hired Dr. Jennifer Molandes. By that time, the clinic had received more than $1.6 million from Medicaid for services that had been billed falsely under Dr. Kim's name.

In 2011, a woman entered the clinic, complaining that the clinic had billed Medicaid for services that had never been provided to her children, who were former patients. The woman was distressed because she had taken her children to another clinic, and the dentist there was unable to provide the children with necessary treatment because records indicated that Medicaid had already paid for the treatment. A dental assistant referred the matter to Dr. Molandes, who collected a sample of patient charts and their accompanying bills. When she realized that the files did not match because the clinic was overbilling, Dr. Molandes reported the fraud to Medicaid. She quit shortly thereafter.

Auditors pored through the clinic's records and confirmed the reports of fraud. Of all the money that the clinic had received from Medicaid after Dr. Kim's

exit, the auditors determined that at least $1.2 million represented services that had never been rendered.

Appellant and Simmons were both charged with theft, but Simmons pleaded guilty and testified during appellant's trial. Simmons confessed that he was responsible for the fraudulent billings and that he had used the clinic's bank accounts for personal purposes. Simmons's spending was extravagant: it included tickets to NBA basketball games and trips to Florida, New York, and California. Simmons paid for appellant to accompany him on all of these excursions, but as soon as the fraud was reported, appellant expected Simmons to "fall down on the sword."

Appellant testified in his own defense. He claimed that he never submitted a fraudulent bill to Medicaid for services that had not been performed. Appellant blamed Simmons for that malfeasance. Appellant admitted, however, that he knew that the clinic had continued to use Dr. Kim's Medicaid provider number long after Dr. Kim had left the clinic. Appellant attempted to explain that this use was permitted under an agreement with Dr. Kim, despite Medicaid regulations to the contrary.

The State produced evidence that tended to show appellant's complicity in the fraud. This evidence included testimony that appellant received a salary as high as $3,000 per week, even though appellant only appeared in the clinic once every month. The State further demonstrated that appellant had used the clinic's bank account for his own purposes, including to pay for a mortgage, a car, a party venue, and various home services.

The State also elicited testimony about appellant's prior experience. Before opening the clinic, appellant had served as the office manager of another dental practice that was legally owned and operated by a licensed dentist. In this other

4

job, appellant regularly created production reports that showed the amount of billing performed by the office's two practicing dentists. After their services were combined, the two dentists rarely billed more than $100,000 per month, except for during the busy summer months. Appellant's clinic, by contrast, had the capacity for only a single practicing dentist, yet the clinic frequently billed in excess of $100,000 each month. At its apex in January 2011, the clinic received more than $140,000 from Medicaid. Appellant had access to all of the billings that were submitted by the clinic, but he never reviewed them. The State suggested that appellant was willfully turning a blind eye because he knew the billings were fraudulent.

To buttress this theory, the State elicited additional evidence that, in 2010, appellant had called a meeting with Simmons and Simmons's parents to address Simmons's extreme spending habits. The meeting occurred shortly after Simmons had returned from a trip to Europe to see a long-jump competition. Appellant knew that Simmons had been drawing on the clinic's bank accounts for personal purposes, but despite his concern for Simmons's spending habits, appellant testified that he never reviewed the clinic's bank statements. As before, the State intimated that appellant had chosen to ignore the bank statements because he knew that the clinic was receiving an inordinate amount of disbursements from Medicaid.

## APPLICABLE LAW AND STANDARD OF REVIEW

Cases of alleged Medicaid fraud may be prosecuted under the general theft statute. *Cf. Odelugo v. State*, 443 S.W.3d 131, 133 n.4 (Tex. Crim. App. 2014) (defendant was charged with engaging in organized criminal activity by unlawfully appropriating at least $200,000 from Medicare and Medicaid); *Turner v. State*, 636 S.W.2d 189, 192 (Tex. Crim. App. 1980) (op. on reh'g) (defendant was charged

5

with unlawfully appropriating at least $10,000 from Blue Cross-Blue Shield, which was underwriting Medicaid). A person commits a theft if the person unlawfully appropriates property with the intent to deprive the owner of the property. *See* Tex. Penal Code § 31.03(a). An appropriation of property is unlawful if it is without the owner's effective consent or if the property is stolen and the actor appropriates the property knowing that it was stolen by another. *Id.* § 31.03(b)(1)–(2). Consent is not effective if it is induced by deception or coercion. *Id.* § 31.01(3). If the theft occurs in connection with a contract, there must be proof that the appropriation was the result of a false pretext, or fraud, and that the person intended to deprive the owner of the property at the time the property was taken. *See Taylor v. State*, No. PD-0051-14, — S.W.3d —, 2014 WL 6983938, *5 (Tex. Crim. App. Dec. 10, 2014); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

When determining the grade of theft, the amounts taken may be aggregated if the amounts were unlawfully appropriated pursuant to one scheme or continuing course of conduct. *See* Tex. Penal Code § 31.09. Here, appellant was charged with the aggregate theft of at least $200,000, which is the highest grade of theft proscribed under our penal system. *Id.* § 31.03(e)(7). To obtain a conviction, the State accordingly had to prove that appellant unlawfully appropriated at least $200,000 from Medicaid with intent to deprive Medicaid of that amount.

Intent may be inferred from the surrounding circumstances. *See Smith v. State*, 965 S.W.2d 509, 518 (Tex. Crim. App. 1998). Where, as here, a person is also charged as a party to an offense, the person may be criminally responsible for an offense even if the unlawful act was performed by another. *See* Tex. Penal Code § 7.01(a). A person is criminally responsible for an offense committed by another if, while acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the

6

offense. *Id.* § 7.02(a)(2). A person also bears criminal responsibility for an offense committed by the conduct of another if, while having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense. *Id.* § 7.02(a)(3).

When reviewing the legal sufficiency of the evidence, we examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). The evidence is insufficient when the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense. *See Garcia v. State*, 367 S.W.3d 683, 687 (Tex. Crim. App. 2012).

Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Because the jury is the sole judge of the credibility of witnesses and of the weight given to their testimony, any conflicts or inconsistencies in the evidence are resolved in favor of the verdict. *See Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). Our review includes both properly and improperly admitted evidence. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We also consider both direct and circumstantial evidence, as well as any reasonable inferences that may be drawn from the evidence. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

7

## ANALYSIS

The parties do not dispute that Simmons committed an aggregate theft of $200,000 or more. The question we consider is whether there is legally sufficient evidence that appellant acted as a party to that theft. The State asserts that appellant may be criminally responsible under two separate theories of culpability. The first theory focuses on appellant's knowledge of the fraudulent use of Dr. Kim's Medicaid provider number, and the second theory focuses on his failure to prevent the fraudulent billing of services never rendered. We examine each of these theories in turn.

### A. Fraudulent Provider Number

Appellant agreed to follow all Medicaid rules and regulations when he submitted an application to register his clinic as a Medicaid provider. One of these rules required him to certify that any claim submitted by the clinic was "true, accurate, and complete," and that the services reported on the claim "were personally rendered by the billing provider or under the personal supervision of the billing provider." *See* 2008 Texas Medicaid Provider Procedures Manual § 1.2.7; *see also* 1 Tex. Admin. Code § 354.1001.

In this case, the clinic submitted claims for more than $1.6 million in services that were falsely billed under Dr. Kim's Medicaid provider number. Appellant testified that he knew the clinic had been using Dr. Kim's Medicaid provider number even though Dr. Kim no longer worked there. However, appellant insisted that this practice was authorized under an agreement with Dr. Kim.

A reasonable juror could determine that appellant knew that the practice was unauthorized. Simmons testified that he approached appellant about the continued use of Dr. Kim's Medicaid provider number during the interim period in which the

8

clinic lacked a permanent dentist. Instead of instructing Simmons to stop the prohibited practice, appellant advised him to keep the business "under the radar." From this statement, a juror could reasonably infer that appellant knew his operation was illegal. *See Wirth*, 361 S.W.3d at 697 (fraud may be demonstrated by evidence that the defendant acted with "an understanding and common design to do the prohibited act"). There would have been no need for furtive action if, as appellant suggested at trial, the clinic was acting within the scope of Medicaid rules and regulations by submitting claims under Dr. Kim's name.

The evidence accordingly supports a finding that appellant encouraged Simmons to deceive Medicaid, and therefore, that appellant acted as a knowing party to theft. *See* Tex. Penal Code § 7.02(a)(2) (discussing a person's party liability); *id.* § 31.01(1)(A) (providing that a person acts by "deception" if he creates a false impression through words or conduct that is likely to affect the judgment of another in a transaction, and that the person does not believe to be true); *cf. Nwosoucha v. State*, 325 S.W.3d 816, 840–41 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd) (conviction for engaging in organized criminal activity was supported by evidence that the defendant had falsified information that was submitted to Medicaid).

## B. Services Never Performed

Appellant also bears criminal responsibility for Simmons's fraudulent billing of services that were never performed, a theft valued at more than $1.2 million. As stated above, a person is criminally responsible for an offense committed by the conduct of another if while "having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense." *See* Tex. Penal Code § 7.02(a)(3).

9

In this case, it is undisputed that appellant, as an owner of the clinic, owed a legal duty to Medicaid to verify that all claims submitted by Simmons were "true, accurate, and complete." *See* 2008 Texas Medicaid Provider Procedures Manual § 1.2.7; *see also* 1 Tex. Admin. Code § 354.1001. Despite this duty, as well as evidence that appellant made the ultimate business decisions for the clinic, appellant testified that he never reviewed the claims that had been submitted by Simmons. Appellant also admitted that he implemented no safeguards that would have prevented the submission of fraudulent claims.

A reasonable juror could determine that appellant failed to take action because he intended to promote or assist the commission of Simmons's $1.2 million theft. The evidence showed that appellant knew from prior experience what a small clinic would normally bill in a month, and that he was aware of Simmons's lavish spending habits from the clinic's bank accounts. Appellant and Simmons each had access to the clinic's accounts, and they both drew on the accounts for personal purposes. In some instances, with appellant's knowledge, Simmons even used a clinic account to pay for appellant to accompany him on trips. The jury could have reasonably found that appellant took no action to prevent Simmons's theft because appellant knew that he was sharing in the fruits of the crime. *See* *Medrano v. State*, 612 S.W.2d 576, 578 (Tex. Crim. App. [Panel Op.] 1981) (noting that a night watchman or policeman would be criminally responsible as a party to an offense if he purposefully neglected his duty with the intent to assist the perpetuating party in the commission of an offense).

## C.    Appellant's Counterargument

Appellant contends that the trial court's judgment should be reversed because the evidence in support of his conviction is "overwhelmingly outweigh[ed]" by four factors. The factors are as follows: (1) Simmons, rather than

appellant, was the person who had actually performed the fraudulent overbilling; (2) appellant was not actively involved in the management of the clinic; (3) an auditor testified that appellant's salary may have been only $65,000 per year, meaning that his weekly pay was much less than $3,000; and (4) the State was unable to prove with certainty whether appellant or Simmons was responsible for using the clinic's debit card for a select group of non-business transactions.

Appellant's argument is misplaced. In a legal sufficiency challenge, we do not weigh the evidence in support of the conviction against any controverting evidence that may be in the record. Rather, we view all of the evidence in the light most favorable to the verdict and determine whether a rational jury could have found all elements of the offense beyond a reasonable doubt. *See Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011). For the reasons explained above, we conclude that the jury in this case could have found every element of theft beyond a reasonable doubt.

## CONCLUSION

The trial court's judgment is affirmed.

/s/     Tracy Christopher
Justice

Panel consists of Chief Justice Frost and Justices Christopher and Busby.
Publish — Tex. R. App. P. 47.2(b).

11