**Affirm and Memorandum Opinion filed November 22, 2016.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-15-00732-CR

---

**ANTHONY DERON CARR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 263rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 1411110**

---

## M E M O R A N D U M   O P I N I O N

Anthony Deron Carr appeals his conviction for possession with intent to deliver more than four but less than two hundred grams of cocaine. *See* Tex. Health & Safety Code § 481.112(A) (West 2015). Appellant raises three issues for review: (1) whether the evidence was legally sufficient to support his conviction; (2) whether forgoing factual-sufficiency review violates the Constitutional guarantees of equal protection and due process; (3) whether the trial court's

admission of testimonial hearsay statements from an undisclosed informant violated his Constitutional rights to confrontation and due process; and (4) in the alternative, whether he received ineffective assistance of counsel. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

During December 2013, the Harris County Sherriff's Department received an anonymous tip that appellant was involved in drug activity. Acting on the tip, Deputy Anthony Thompson parked his unmarked car at a nearby church to observe appellant at a residence. For approximately one hour, Deputy Thompson observed foot traffic consistent with drug distribution. Numerous people stopped at the residence for a few minutes and then left. Appellant remained in the residence during this time. Deputy Thompson did not observe any hand-to-hand drug transactions.

Morris Williams and another individual arrived. Deputy Thompson did not know whether they entered the residence. When appellant and the two individuals began to leave the property, Deputy Thompson, and his back-up, moved in to detain them. Appellant remained while the other individuals fled on foot. Deputies found Williams hiding in a nearby trailer. The other individual was not located. Deputies did not search the trailer. Deputies detained appellant and Williams together in the patrol car.

Deputy Thompson asked appellant about the residence and told appellant what he observed during his surveillance. Appellant said he did not live at the residence and that it belonged to his uncle. Deputy Thompson later learned that appellant's uncle was deceased. Deputy Thompson then approached the residence and smelled the odor of marijuana. This prompted Deputy Thompson to ask appellant about the odor. Appellant admitted that somebody was smoking marijuana at the residence. Deputies subsequently obtained a search warrant for the

2

residence based on the marijuana odor and activity Deputy Thompson observed that morning.

The dash cam video in the patrol car recorded conversations between appellant and Williams while they were detained. Appellant's statements reveal that he was frustrated and nervous, and that there was something significant about a box inside the house. Williams told appellant that there was drugs and money in the Buick. Deputies did not search the Buick.

Upon searching the residence pursuant to the search warrant, deputies recovered a total of fifty-two grams of cocaine. Six grams of powder cocaine was hidden in a teddy bear. The remaining cocaine, in the form of crack, was found in a cereal box. Deputies found men's clothing and mail addressed to appellant in the same room as the teddy bear that hid the six grams of powder cocaine. The crack cocaine in the cereal box appeared to be prepared for distribution. Only law enforcement personnel were present when the residence was searched. When deputies searched appellant, they found no drugs, money, or firearms. Appellant did not appear to be under the influence of any drugs.

A jury convicted appellant of possession with intent to deliver cocaine. Jurors assessed punishment at twenty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant timely filed a notice of appeal.

## II.  ANALYSIS

### A. Factual Sufficiency

We first address appellant's second issue because its resolution determines the standard under which we review his first. Appellant raises multiple Constitutional challenges to the standard of review for sufficiency of the evidence

and asks this court to conduct a factual-sufficiency review of the evidence adduced at trial—a standard that the Court of Criminal Appeals expressly has rejected. *Brooks v. State*, 323 S.W.3d 893, 894 (Tex. Crim. App. 2010) (plurality op.). As an intermediate appellate court, we are without power to conduct factual-sufficiency review because we are "bound to follow the law as declared by the state's highest courts." *LeBlanc v. State*, 138 S.W.3d 603, 606 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Rodriguez v. State*, 47 S.W.3d 86, 94–95 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd)); *see also Mayer v. State*, 494 S.W.3d 844, 848 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). Although an intermediate appellate court's decision "shall be conclusive on all questions of fact brought before them on appeal or error," the Texas Court of Criminal Appeals has the authority to determine questions of law, including the standard of review that an intermediate appellate court must use in conducting factual review. *See* Tex. Const. art. V, § 6(a) (providing for questions of fact to be resolved by intermediate appellate courts); *Roberts v. State*, 221 S.W.3d 659, 663 (Tex. Crim. App. 2007).

In *Brooks,* the Court of Criminal Appeals directed intermediate courts to apply a single standard of review to legal- and factual-sufficiency challenges in criminal cases, using the Constitutional standard established in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). *Brooks*, 323 S.W.3d 893 at 901. The Court of Criminal Appeals determined that the standard announced in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996), should no longer be applied to review the factual sufficiency of the evidence, and instructed lower courts to follow the *Jackson* standard for the review of factual-sufficiency challenges. *Id.* In numerous later decisions, the Court of Criminal Appeals has reaffirmed its directive to the courts of appeals—not merely as a plurality of the court, but instead by its now-unanimous precedent. *See, e.g.*, *Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011) (per curiam); *Martinez v. State*, 327 S.W.3d 727, 730 (Tex. Crim. App.

4

2010). When, in a situation such as this, the Court of Criminal Appeals "has deliberately and unequivocally interpreted the law in a criminal matter, we must adhere to its interpretation." *Mason v. State,* 416 S.W.3d 720, 728 & n.10 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd). Accordingly, we reject appellant's challenge to the single standard of review announced in *Brooks* and overrule appellant's second issue.

## B. Legal Sufficiency

Having overruled appellant's request for factual-sufficiency review, we address his first issue challenging the legal sufficiency of the evidence.

When engaging in a review of the legal sufficiency of the evidence supporting a conviction, we "examine all of the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *Price v. State*, 456 S.W.3d 342, 347 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd). "Although we consider everything presented at trial, we do not reevaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder." *Price*, 456 S.W.3d at 347.

### (1) Knowing Possession

A person commits an offense if he knowingly possesses, with intent to deliver, a controlled substance. *See* Tex. Health & Safety Code § 481.112(A) (West 2015). Cocaine is a controlled substance. *See id.* § 481.102(3)(D). "Possession" means "actual care, custody, control or management." *Id.* § 481 .002(38). "In a possession-with-intent-to-deliver case, the State must prove the defendant (1) exercised care, custody, control, or management over the controlled substance, (2) intended to deliver the controlled substance to another, and (3) knew

5

that the substance in his possession was a controlled substance. *Cadoree v. State*, 331 S.W.3d 514, 524 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

Possession need not be exclusive. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). When, as here, the accused is not in exclusive possession of the place where the contraband is found, the record must contain additional facts and circumstances linking the defendant to the contraband.[1]

The Court of Criminal Appeals has provided a non-exhaustive list of fourteen "links" that might prove possession and knowledge of contraband:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband;(10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12; *see also Flores v. State*, 440 S.W.3d 180, 188 (Tex. App. —Houston [14th Dist.] 2013), *judgment vacated on other grounds*, 427 S.W.3d 399 (Tex. Crim. App. 2014). The links analysis "protects the innocent

---

[1] Appellant contends that the State failed to prove exclusive possession of the house. The record supports, and the State does not contest, this conclusion. Therefore, the record must contain additional facts and circumstances which link appellant to the cocaine. *Poindexter v. State*, 153 S.W.3d 402, 406, 408 (Tex. Crim. App. 2005) (internal quotations omitted), *overruled in part on other grounds by Robinson v. State*, 466 S.W.3d 166, 173, n.32 (Tex. Crim. App. 2015).

bystander . . . from conviction merely because of his fortuitous proximity to someone else's drugs." *Evans*, 202 S.W.3d at 161–62. The number of links is not dispositive, "but rather the logical force of all the evidence, direct and circumstantial." *Id.* at 162. Additionally, "[t]he absence of various links does not constitute evidence of innocence to be weighed against the links present." *Flores*, 440 S.W.3d at 189 (quoting *Satchell v. State*, 321 S.W.3d 127, 134 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd)).

Factor (1) favors a link. When, as here, the searched location is in the same condition as when the defendant was last present, this factor may favor a link. *See Haggerty v. State*, 429 S.W.3d 1, 7 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (defendant was present for purposes of links analysis, despite not witnessing search, because the house "would have been in the same condition as it was when appellant left and locked the door").

Factors (2), (3), (4), and (5) do not link appellant to the cocaine. The contraband was not in plain view. Appellant was outside of the home and not in close proximity to the cocaine. Deputy Thompson testified that appellant did not appear to be under the influence of drugs, and appellant did not possess any contraband or cocaine when he was arrested.

Appellant contends that factor (6) does not favor a link because he made incriminating statements about marijuana but not cocaine. We disagree. Appellant admitted to marijuana use at the house and made several statements that, in context, link appellant to the cocaine. Appellant referenced a box. He also stated, "Things are about to get deeper than rap," and "I should had these folks shoot me." Deputy Thompson testified to the significance of this first statement: "It could mean, I'm going to get into some really deep trouble, or, I might spend some time [in prison]." A jury could reasonably infer, based on appellant's statements, that

7

appellant knew about, and was linked to, the cocaine hidden in the box. Factor (6) favors a link.

Factors (7), (8), and (9) do not link appellant to the cocaine. Appellant did not attempt to flee or make furtive gestures. The record does not indicate whether the cocaine had an odor.

Factor (10) favors a link. The residence smelled of marijuana and appellant admitted to using marijuana. Although no marijuana was recovered, a jury could reasonably infer, from the odor and appellant's admission, that marijuana contraband had been present.

Factor (11) favors a link. Both parties agree that appellant had the right to possess the house. On the morning of the arrest, Deputy Thompson observed appellant stay at the residence while others came and went. Finally, police found appellant's mail and male clothing inside the same bedroom where they found some of the cocaine.

Factor (12) favors a link because the places where the drugs were found, a cereal box on the kitchen counter and inside a teddy bear, were enclosed.

Factor (13) does not favor a link because the record contains no evidence that appellant had a large amount of money.

Factor (14), which asks whether appellant's conduct indicated a consciousness of guilt, favors a link. Deputy Thompson told appellant what he saw appellant do during his surveillance. While appellant and his associate Williams were detained in the patrol car, appellant said, "The man say he be seeing me all morning. That's how I know no one's paying attention. He ain't lying. He told me every move I made." Williams said "Blue" had the money and appellant replied that he was not concerned about the money, which was "petty shit" compared to

what the police were after. Appellant told Williams that police were obtaining a warrant, and then said: "Things are about to get deeper than rap." Appellant indicated that there was something special about a box in the house and police found the majority of the cocaine in a cereal box. He also commented "I should had these folks shoot me." From these facts, a jury could reasonably infer that appellant was conscious of his guilt.

In sum, Deputy Thompson observed appellant remain at the residence while other people were frequently coming and going in a high-crime neighborhood. When deputies executed the search warrant, the house was in the same condition as when appellant was last there, and only the deputies were present. Police found crack cocaine enclosed in the cereal box on the kitchen counter and appellant indicated, while detained, that there was something significant about "a box." Appellant had the right to possess the house and his property was in the bedroom where police found some of the cocaine.[2] Once police detained appellant and informed him that they were getting a search warrant, appellant became upset and made statements to Williams indicating that he knew of the contraband and that he would face serious criminal charges. From these facts, a jury rationally could have concluded that appellant exercised the requisite care, custody, control, or management over the contraband and that appellant knew the substance possessed was contraband.[3]

---

[2] The record does not contain any evidence of shared possession of the bedroom.

[3] Appellant equates this case with *Medina*, a case where there was legally insufficient evidence to support a conviction for possession of cocaine. *Medina v. State*, __ S.W.3d __, 2011 WL 6013094 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011, no pet.). This case is distinguishable from *Medina*. There, Medina was not present at the house when the drugs were found, the drugs were found in the living room near two other present individuals, and Medina was absent from the house for at least four hours prior to the search. *Id.* at *4–7. Further, while police observed Medina engaging in hand-to-hand suspected drug transactions during previous surveillance on the residence, those transactions were unconfirmed and no transactions took place on the date of

Appellant argues that there is sufficient evidence linking Williams to the cocaine. For instance, Williams admitted to stashing drugs in the Buick, he could have been inside the house, and he attempted to evade deputies. This scenario is a possible inference from the evidence, but it is not the only possible inference. When the record supports conflicting inferences, we presume that the jury resolved the conflicts in a manner supporting its verdict and defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### (2) Intent to Deliver

"Deliver" means to transfer, actually or constructively, to another a controlled substance." Tex. Health & Safety Code § 481.002(8) (West 2015). Expert testimony by an experienced law enforcement officer, as used in this case, may help establish an accused's intent to deliver. *See Mack v. State,* 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.). Quantity may show that a defendant intends to distribute narcotics rather than just possess it for personal use. *Poindexter*, 153 S.W.3d at 412.

The amount of drugs seized and its packaging provided evidence of intent to deliver. Deputy Thompson testified that the cocaine's packaging and the manner in which it was cut indicated that it was prepared for distribution. Deputy Thompson estimated the street value of the crack cocaine and powder cocaine at approximately $600 and $75, respectively. Based on his experience in the field, Deputy Thompson testified that appellant did not appear to be a crack addict. From

---

the arrest. *See id.* In sustaining Medina's sufficiency challenge, the court focused on the fact that another person with a right to possess the residence was present at the time the officers entered, and there were no other links. *Id.* at *5. Here, by contrast, police immediately detained appellant and his two associates as they were leaving the house, nobody was present inside the house during the search, and appellant made statements strongly indicating frustration and guilt. Furthermore, police here executed the search warrant on the same day of Deputy Thompson's surveillance.

these facts, a juror rationally could have concluded that appellant did not possess the drugs for personal use, but for delivery.

Viewing the evidence in the light most favorable to the verdict, we hold that the evidence was legally sufficient to support the jury's verdict that appellant possessed and intended to deliver cocaine. We overrule appellant's first issue.

## C. Hearsay

In his third issue, appellant contends the trial court violated his rights to due process, confrontation, and cross-examination when it (1) admitted testimonial hearsay from an anonymous tipster and (2) denied disclosure of the tipster's identity.

### (1) Hearsay and Right to Confrontation

Appellant argues that the anonymous tipster's out-of-court statement is testimonial hearsay. The hearsay was revealed to the jury within this exchange between Deputy Thompson and the prosecutor:

Q: Let me stop you there. What led you to start investigating this residence?

A. An anonymous tip.

…

Q. Where did that anonymous tip come from?

A. Anyone can call our database or our office and leave information on drug activity.

…

Q. So after receiving an anonymous tip, what did you do?

A. Once I found out who the target was, I started to do my homework on who he was and where he lived at. And I already had the target location, I've just got to make sure that this is where he hangs out at and where all the drug activity is taking place.

Q. So the information you got was not that somebody was doing

drugs, it was specifically that the defendant was doing drugs?

A. Yes.

Constitutional claims can be waived by failure to object. *Smith v. State*, 721 S.W.2d 844, 855 (Tex. Crim. App. 1986). To preserve an error for appellate review, a party must present a timely objection to the trial court, state the specific grounds for the objection, and obtain a ruling. Tex. R. App. P. 33.1(a). To preserve error where objectionable testimony is involved, a party must object every time the allegedly inadmissible testimony is offered. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991); *see also Rios v. State*, 263 S.W.3d 1, 6 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd, untimely filed).

Appellant did not object to the State's questions or Deputy Thompson's testimony. Appellant cites the transcript for the out-of-jury conference to show that he preserved this issue for appeal. However, at no point during that conference did defense counsel argue that the State repeated or elicited inadmissible hearsay, or that appellant's Sixth Amendment right to confrontation was violated. Accordingly, appellant's failure to object on hearsay and confrontation grounds at trial waives these arguments on appeal. *See Smith*, 721 S.W.2d at 855; *see also Ethington*, 819 S.W.2d at 858.[4]

### (2) Due Process Under Rule 508(c) and *Brady*

In his sub-issues, appellant contends he was denied the process due under rule 508(c) and *Brady*. *See* Tex. R. Evid. 508(c)(2); *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

---

[4]Appellant requests reversal based on the constitutional harm standard under Texas Rule of Appellate Procedure 44.2(a). Appellant is not entitled to a constitutional harm analysis because he did not preserve this issue for appellate review. *See Cosio v. State*, 353 S.W.3d 766, 776–77 (Tex. Crim. App. 2011) (stating that because defendant did not preserve his constitution-based jury charge claim, "he [was] not entitled to a harm analysis under Rule 44.2(a)").

Pursuant to rule 508(c), the State is privileged from disclosing the identity of a person that has furnished relevant or useful information to a law enforcement investigation. Tex. R. Evid. 508(c)(2). The privilege is inapplicable "if the court finds a reasonable probability exists that the informer can give testimony necessary to a fair determination of guilt or innocence." *Id.* "The mere filing of a Rule 508 motion is insufficient to obtain a hearing, much less compel disclosure." *Bridges v. State*, 909 S.W.2d 151, 157 (Tex. App.—Houston [14th Dist.] 1995, no pet.). The burden lies with the defendant to satisfy the terms of the exception, and this obligates him to establish that the information is necessary and significant. *Ford v. State*, 179 S.W.3d 203, 210 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd); *see also Bridges*, 909 S.W.2d at 157 ("[T]he informer's potential testimony must be shown to significantly aid appellant, and mere conjecture or supposition about possible relevance is insufficient."). If the court finds that the privilege is inapplicable and the State claims the privilege, the court must give the State an opportunity to show in camera facts relevant to determining whether this exception is met. Tex. R. Evid. 508(c)(2).

During his cross-examination, defense counsel learned that Deputy Thompson contacted the individual who provided the anonymous tip. Defense counsel subsequently asked Deputy Thompson for the tipster's name. The State objected, claiming the confidential informant privilege. *See* Tex. R. Evid. 508(c). The trial court held a hearing outside the presence of the jury. During the hearing, defense counsel stated that he knew about the initial anonymous tip but the State did not inform him that Deputy Thompson had later phoned the tipster. Defense counsel stated that the tipster could now be classified as an informant, and that the State should have disclosed this fact. Defense counsel concluded that the State

13

violated *Brady*. After hearing Deputy Thompson's testimony[5] and counsel's arguments, the trial court overruled appellant's objection, although the defense had not objected before or during this conference.

Whether the tipster remained anonymous or became a confidential informant is immaterial to our analysis. Appellant did not move to compel the state to disclose the alleged confidential informant under any of the rule 508(c) exceptions. Defense counsel did not argue, pursuant to rule 508, that information from the informant was necessary and significant.[6] Defense counsel appeared to assert only that the State violated *Brady*. What is more, appellant has not cited, and the record does not reflect, a trial court ruling on this issue. Therefore, appellant failed to preserve the rule 508(c) issue for appeal. *See Buchanan v. State*, 207 S.W.3d 772, 774–78 (Tex. Crim. App. 2006) (trial court motion based on constitutional arguments did not preserve error for statutory claims on appeal); *see also* Tex. R. App. Proc. 33.1(a).

To demonstrate reversible error under *Brady*, an appellant must show: (1) the State suppressed evidence, regardless of the prosecution's good or bad faith; (2) the suppressed evidence is favorable to appellant; and (3) the evidence is material, that is, there is a reasonable probability that, had the evidence been disclosed, the outcome of the trial would have been different. *See United States v. Bagley*, 473 U.S. 667, 682–83 (1985); *Ex parte Kimes*, 872 S.W.2d 700, 702 (Tex. Crim. App. 1993).

---

[5] During the hearing, Deputy Thompson testified that the initial tip informed him where the drug activity was taking place, and after contacting the informant, he learned of appellant's identity.

[6] Instead, defense counsel argued: "And I'm not saying she is a confidential informant, Judge. I'm saying that certainly this information should have been brought to my attention immediately, if not sooner."

"When the evidence is disclosed at trial, the issue is whether the tardy disclosure prejudiced the defendant." *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999); *see also Wilson v. State*, 7 S.W.3d 136, 146 (Tex. Crim. App. 1999). Prejudice is not shown where the information is disclosed in time for the accused to make effective use of it at trial. *See Little*, 991 S.W.2d at 866. When defendant fails to request a continuance, he waives any error resulting from the State's failure to disclose evidence. *See Lindley v. State*, 635 S.W.2d 541, 543–44 (Tex. Crim. App. 1982); *see also State v. Fury*, 186 S.W.3d 67, 73-74 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

Appellant learned of the phone interview during trial. Appellant did not seek a postponement, move for continuance, or move to disclose the alleged informant's identity under rule 508. Tex. Crim. Proc. Code art. 29.13 (West 2015); Tex. R. Evid. 508(c)(2). Presenting these motions would have allowed appellant time to address any impact of, and develop a necessary response to, the evidence. Appellant did not seek this relief and consequently waived any error. *See Lindley*, 635 S.W.2d at 543–44.

Assuming appellant's *Brady* complaint was properly preserved, it still fails. Appellant directs us to *Bagley* and argues that impeachment evidence is exculpatory. *Bagley*, 473 U.S. at 676. In *Bagley*, the government induced the witnesses to testify against the defendant. The government knew about this impeachment evidence and withheld it from the defense. *Id.* By contrast, evidence that Deputy Thompson contacted the tipster and asked for appellant's identity is not exculpatory and appellant fails to point to any impeachment evidence the State withheld here.

To the extent that appellant argues that he has a right to cross-examine the tipster for discovery of potential impeachment evidence, the United States

Supreme Court has stated that "[t]here is no general constitutional right to discovery in a criminal case, and *Brady* does not create one." *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). Appellant therefore cannot use *Brady* to bypass rule 508 or create a new right to discovery.

We overrule appellant's sub-issues.

### D. Ineffective assistance of counsel

Appellant argues, in the alternative, that trial counsel rendered ineffective assistance by failing to preserve his third issue on appeal. We found that appellant failed to preserve the hearsay, confrontation, and rule 508 issues. We therefore understand that appellant claims his trial counsel was ineffective in two instances– failing to object to Deputy Thompson's testimonial hearsay and failing to file a motion to disclose the State's confidential informant.

To prove ineffective assistance of counsel, appellant must show by a preponderance of the evidence that: (1) counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 688–92; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). When determining whether a defendant was prejudiced, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695. "Appellant must prove both prongs of *Strickland* by a preponderance of the evidence in order to prevail." *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000).

On appeal, there is a "strong presumption that counsel's conduct fell within

16

a wide range of reasonable representation." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). "To overcome the presumption of reasonable professional assistance, any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (internal quotation marks omitted). When, as here, the record is silent regarding trial counsel's strategy, we will not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Counsel is not required to engage in the filing of futile motions. *Wert v. State*, 383 S.W.3d 747, 753 (Tex. App.—Houston [14th Dist.] 2012, no pet.). An appellant who claims that counsel was ineffective for failing to object during trial must show that it would have been error for the trial court to overrule the objection. *See Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004) (citing *Vaughn v. State*, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996)).

With regard to the rule 508 motion to disclose the informant's identity, appellant had to establish that the information from the potential testimony was necessary to a fair determination of guilt or innocence. *See Bridges,* 909 S.W.2d at 157 ("[T]he informer's potential testimony must be shown to significantly aid appellant, and mere conjecture or supposition about possible relevance is insufficient" to overcome the State's assertion of privilege). The record does not show whether appellant would have met his burden in overcoming the State's assertion of privilege. Furthermore, appellant did not allege ineffective assistance of counsel in a motion for new trial, and the record contains no explanation for counsel's conduct. In the face of a silent record, appellant has not overcome the presumption of reasonable professional judgment. Trial counsel therefore did not render ineffective assistance by failing to file a motion to disclose the informant's

identity.

We next consider trial counsel's failure to object during the State's direct examination of Deputy Thompson. State's counsel asked: "So the information you got was not that somebody was doing drugs, it was specifically that the defendant was doing drugs?" To which Deputy Thompson responded: "Yes." We assume, without deciding, that the State's question contained inadmissible hearsay to which trial counsel could have objected and received a favorable ruling. Again, the record contains no explanation for counsel's conduct. *See Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999) (because record contained no information as to "why appellant's trial counsel failed to object to the State's persistent attempt to elicit inadmissible hearsay" defendant "failed to rebut the presumption that this was a reasonable decision"). This isolated failure to object does not present the sort of outrageous behavior in which no competent counsel would engage. *Ingham v. State*, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) ("[I]solated failure to object to . . . improper evidence does not constitute ineffective assistance of counsel."); *Wert*, 383 S.W.3d at 757 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (same).

Even assuming trial counsel's isolated failure fell below an objective standard of reasonableness, appellant was not prejudiced by trial counsel's conduct. In addressing the prejudice requirement under *Strickland's* second prong, we may consider the totality of the evidence before the jury. *Ex Parte Ellis*, 233 S.W.3d 324, 331 (Tex. Crim. App. 2007). "Some errors will have . . . a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have . . . an isolated, trivial effect." *Strickland*, 466 U.S at 695–96. Appellant contends that he was harmed by admission of the statement because: the State had not affirmatively linked appellant to the drugs, but the statement offered a link; the statement was not cumulative of other evidence;

the statement corroborated the cocaine police found at the house; and that the State's case was weak.

When we determined that there was legally-sufficient evidence to convict appellant of the charged offense, we did not consider the tipster's statement. That is, appellant was charged with, and tried for, possession of a controlled substance based on physical evidence  and testimony provided by Deputy Thompson—not the tipster. Additionally, the statement that "defendant was doing drugs" was of limited relevance to the State's case against appellant. The statement was vague as to which drug, and given that appellant admitted to marijuana use at the house, it did little to bolster a link to possession of cocaine over the marijuana. Reviewing appellant's contentions in light of the totality of the evidence, had the informant's statement been suppressed, it would not have created a reasonable doubt that did not otherwise exist. Having failed to prove either prong under *Strickland*, appellant's claim of ineffective assistance of counsel fails.

## III.    CONCLUSION

Accordingly, we affirm the judgment of the trial court.


/s/      Marc W. Brown
Justice


Panel consists of Justices Busby, Donovan, and Brown.
Do Not Publish — Tex. R. App. P. 47.2(b).